IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| TAMMIE HILL, et al., | CASE NO. 3:17-cv-0678 |
| PLAINTIFFS | JUDGE WILLIAM L. CAMPBELL, JR. MAGISTRATE JEFFERY S. FRENSLEY |
| - VS. - | |
| WINNEBAGO INDUSTRIES, INC. | PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S |
| DEFENDANT | MOTION FOR SUMMARY JUDGMENT |

Defendant Winnebago Industries, Inc., ("Winnebago") has moved this Court for summary judgment, pursuant to Fed. R. Civ. P. 56, as to Plaintiffs' claims for breach of contract, breach of express and implied warranties, and violation of the Magnuson Moss Warranty Act ("MMWA").

However, as outlined below, there are genuine disputes of material fact and, when viewing the facts in a light most favorable to Plaintiffs, reasonable minds could come to differing conclusions as to all claims and all issues.

Therefore, Defendant's motion must be denied in its entirety.

**A.    Statement of Material Facts**

As outlined in Plaintiffs' Response to Defendant's Statement of Material Facts, and Plaintiffs' Statement of Additional Facts, which is separately filed per local rule and incorporated herein by reference, there are genuine issues of material fact which prevent summary judgment from being entered in Defendant's favor.

**B.    Argument**

    **1.    Plaintiffs' Claims Are Not Barred by Failure to Follow "Notification Procedures" Contained in Winnebago's Warranty**

The first issue before this Court is whether Plaintiffs' claims are barred by failure to follow "notification procedures" contained in Winnebago's Warranty. As outlined below, reasonable minds could conclude that Plaintiffs' claims are not barred.

Plaintiffs followed all steps included in the Winnebago Warranty to "obtain warranty repairs". Alternatively, Plaintiffs were not required to resort to the "notification procedures" contained in the Winnebago Warranty because: (1) the Winnebago Warranty failed of its essential purpose, (2) Plaintiffs substantially complied with the warranty, and (3) there was no meeting of the minds and the "notification procedures" were unconscionable and unenforceable.

Plaintiffs followed all steps included in the Winnebago Warranty to "obtain warranty repairs". The "Obtaining Warranty Repairs" section of the Winnebago Warranty reads as follows:

> Except as otherwise provided herein, to obtain warranty repairs, you must, at your own cost, present your motorhome to an authorized Winnebago service facility during normal business hours and provide a written lost of items to be inspected or repaired to the service facility and Winnebago. In the event that you feel the repairs made by an authorized service center fail or are otherwise inadequate, you must contact Winnebago Owner Relations in writing and advise them of the failure or inadequacy, including a list of the defects, and provide Winnebago an opportunity to repair the motorhome prior to claiming a breach of this warranty. Winnebago may require you to deliver the motorhome to another authorized service center or its facilities in Forest City, IA. If Winnebago requests you to bring the motorhome to Forest City, IA, Winnebago may cover the reasonable cost of transporting the motorhome to and from Forest City, IA. Refusal to allow Winnebago an opportunity to repair the motorhome voids warranty coverage for that repair.

Winnebago Warranty (Defendant's Exhibit 1). Here, Plaintiffs followed all steps included in the Winnebago Warranty to "obtain warranty repairs".

First, Plaintiffs followed all steps included in the Winnebago Warranty in presenting their RV for repair. There is no dispute that CW is an "authorized Winnebago service facility". See Defendant's Statement of Undisputed Facts, Nos. 2, 52. Plaintiffs took the RV to CW for repairs on

2

the date of purchase and then subsequently on February 26, 2016, on September 17, 2016, and on October 31, 2016. Aff. D. Hill (Exhibit 1); CW Repair Order 9250 (Exhibit 9); CW Repair Order 9581 (Exhibit 10); CW Repair Order 11288 (Exhibit 11); CW Repair Order 12449 (Exhibit 12). Plaintiffs made appointments for each and every one of these repairs with CW directly prior to dropping the RV off. D. Hill Depo, P145, L15-18. And, Plaintiffs provided CW with a list of defects in need of repair when they dropped the RV off at CW each time, including on October 31, 2016. Aff. D. Hill (Exhibit 1).

Second, Plaintiffs followed all steps included in the Winnebago Warranty in advising Winnebago that the repairs had failed or were otherwise inadequate. Plaintiffs sent Winnebago an email in writing on October 17, 2016, expressing dissatisfaction with multiple defects in their RV, advising Winnebago of the failure and inadequacy of CW's repairs, and including a list of defects. October 2016 Written Notice (Exhibit 13); Aff. D. Hill (Exhibit 1). Winnebago responded by email on October 19, 2016, instructing Plaintiffs to contact their authorized dealer for repairs. Id. Plaintiffs did so that same day, and CW set an appointment for October 31, 2016. Aff. D. Hill. And Plaintiffs presented the RV for repair on October 31, 2016. Id. On December 16, 2016, after waiting for 2 months, Plaintiffs again contacted Winnebago by email in writing about the RV's many defects and CW's failure to repair them timely, and asked Winnebago to give them their money back. December 2016 Written Notice (Exhibit 14); Aff. D. Hill (Exhibit 1). Winnebago responded that they had investigated, that it was CW's problem, and that they would let Plaintiffs know if they heard anything from CW. December 2016 Written Notice (Exhibit 14); Aff. D. Hill (Exhibit 1). Plaintiffs also provided negative responses to Winnebago in response to multiple survey cards. Aff. D. Hill (Exhibit 1); D. Hill Depo., P115, L21-P116, L4. Lastly, Plaintiffs' attorney sent written notice to

3

Winnebago on Plaintiffs' behalf about the RV's many defects and failed repair attempts, including a list of defects, on January 31, 2017, which was received by Winnebago. S. Mary Depo., P94, L21-P95, L3; Plaintiffs' Cure Letter (attached to S. Mary's deposition as Exhibit 60).

Third, Plaintiff provided Winnebago multiple opportunities to repair the RV, but Winnebago never requested or offered to do so. In fact, Winnebago never attempted to do anything to correct the problems noted in the survey cards or the emails, never instructed Plaintiffs to contact another department, never responded to the pre-suit letter sent by Plaintiffs' attorney on Plaintiffs' behalf, and never requested an opportunity to repair the RV at the Winnebago factory. Aff. D. Hill (Exhibit 1); S. Mary Depo., P94, L21-P95, L17; Plaintiffs' Cure Letter (attached to S. Mary's deposition as Exhibit 60). Every failure to do so was an opportunity to repair the RV that Winnebago didn't take.

Therefore, Plaintiffs complied with all "notification procedures" contained in the Winnebago Warranty. Alternatively, Plaintiffs were not required to resort to the "notification procedures" contained in the Winnebago Warranty because: (1) the Winnebago Warranty failed of its essential purpose, (2) Plaintiffs substantially complied with the warranty, and (3) there was no meeting of the minds and the "notification procedures" were unconscionable and unenforceable.

First, Plaintiffs were not required to resort to the "notification procedures" contained in the Winnebago Warranty because the Winnebago Warranty failed of its essential purpose.

Tenn. Code Ann. § 47-2-719(1) allows parties to contractually limit the remedies available to a buyer. *Baptist Mem'l Hosp. v. Argo Constr. Corp*., 308 S.W.3d 337, 345-350. However, where the limited remedy fails of its essential purpose, all remedies available under the UCC are available to the buyer. *Id.* (citing T.C.A. § 47-2-719(2)(2001); *Watts v. Mercedes-Benz USA, LLC*, 254 S.W.3d 422, 427 (Tenn. Ct. App. 2007)(quoting *Moore v. Howard Pontiac-American, Inc*., 492 S.W.2d 227,

4

229 (Tenn. Ct. App. 1972)). As a general rule, a limited warranty fails of its essential purpose when the warrantor is unable or unwilling to repair or replace in a reasonable time. *Trinity Indus. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 170 (Tenn. Ct. App. 2001); see also T.C.A. § 47-2-719 cmt. 1 (2001). Here, the defects in this RV were not repaired within a reasonable amount of time and, as a result, the Winnebago Warranty failed of its essential purpose.

Here, Plaintiffs' RV was subject to repair twice under the Winnebago Warranty before they took delivery of it in January of 2016 and on February 5, 2016, because the leveling jack system was not working properly and the warning light was illuminating, and more. Aff. D. Hill (Exhibit 1); CW Repair Order 9250 (Exhibit 9). Thereafter, Plaintiffs' RV was in the shop a total of three times for repairs under the Winnebago Warranty after they purchased it, and it was out of service for reason of repairs a total of 140 days up to and including February 13, 2017. Aff. D. Hill (Exhibit 1); CW Repair Order 9581 (Exhibit 10); CW Repair Order 11288 (Exhibit 11); CW Repair Order 12449 (Exhibit 12). Moreover, it is Mr. Bailey's opinion that the RV's defects were not repaired within a reasonable amount of time. Aff. D. Bailey, ¶ 11 (Exhibit 16).

Second, Plaintiffs were not required to resort to the "notification procedures" contained in the Winnebago Warranty because Plaintiffs substantially complied with the "notification procedures" contained in the Winnebago Warranty.

The law requires only substantial compliance with a contract. *Mullins v. Greenwood*, 6 Tenn. App. 327, 333.

> Where parties capable of contracting deliberately enter into a written contract by which there is created a condition precedent to a right of action, such condition must be performed or its requirements waived or excused. With regard to conditions precedent, there must, if such conditions have not been waived or excused, be at least a substantial performance thereof in order to authorize a recovery as for performance of the contract.

5

*Big Fork Mining Co. v. Kentucky Cent. Ins. Co.*, 888 S.W.2d 434, 437 (Tenn. Ct. App. 1994). And, the accomplishment of the purpose and objective of the condition precedent constitutes a substantial performance of the condition. *Id.* Essentially,

> the law looks to the spirit of the contract and not the letter of it, and that the question therefore is not whether a party has literally complied with it, but whether he has substantially done so. This has long been the rule in equity.

*Id.*

Here, based on the facts outlined above, Plaintiffs substantially complied with the "notification procedures" contained in the Winnebago Warranty. Notwithstanding, Defendant argues that Plaintiffs did not strictly comply with the "notification procedures" because they did not specifically direct their written notices to Winnebago's *Owner Relations* department. However, regardless of what department a communication from a dealer or owner is sent to, Winnebago stores those communications all in one place. S. Mary Depo., P46, L9-18; Winnebago Correspondence Documents (attached to S. Mary's deposition as Exhibit 65). Therefore, it does not matter what department written notice goes to because Winnebago stores all communications in one place.

Third, Plaintiffs were not required to resort to the "notification procedures" contained in the Winnebago Warranty because there was no meeting of the minds and the "notification procedures" were unconscionable and unenforceable.

A limitation of remedy that is unconscionable is void. *Baptist Mem'l Hosp.*, 308 S.W.3d at 345-346. Unconscionability can be procedural or substantive or both. *Id.* at 346. Procedural unconscionability is usually "some impropriety during the process of forming the contract that deprives a party of a meaningful choice." *Id.* Substantive unconscionability involves whether the terms of the contract are overly harsh or one-sided. *Id.* The determination of unconscionability

6

focuses on the circumstances as they existed when the parties entered into the contract. *Id.*

Here, the "notification procedures" contained in the Winnebago Warranty are both substantively and procedurally unconscionable. With regards to procedural unconscionability, Plaintiffs were deprived of any meaningful choice because they never had the opportunity to see the Winnebago Warranty before they purchased their RV. Specifically, CW told Plaintiffs that the RV came with a 1 year warranty from Winnebago and provided Plaintiffs with a copy of the attached Winnebago Brochure at the time of sale, which summarized the limited warranty on the back side. D. Hill Depo., P24, L1-8, L22-P25, L3, P111, L2-13; Winnebago Brochure (Exhibit 2). And, Plaintiffs did not receive a copy of the Limited Warranty until sometime after purchase. D. Hill Depo., P111, L2-13. With regards to substantive unconscionability, the "notification procedures" are certainly harsh and one-sided in that they are contained in small type, have no heading clearly warning the owner of their application, and require the consumer owner to go at great lengths to notify Winnebago of any breach of warranty, but require Winnebago to do little or nothing at all in response. See Winnebago Warranty (Defendant's Exhibit 1). Therefore, the "notification procedures" are unconscionable and void.

Notwithstanding, Defendant also argues that Plaintiffs' claims are barred and any written notice was insufficient because: (1) Plaintiffs did not provide CW with a list of issues pertaining to repairs, and (2) Plaintiffs failed to provide Winnebago with an opportunity to repair their RV. Both arguments fail.

First, Plaintiffs provided CW with a list of problems to be repaired when they dropped the RV off at CW on October 31, 2016. Aff. D. Hill. (Exhibit 1).

7

Second, Plaintiffs provided Winnebago with multiple opportunities to request repair of the RV. However, as outlined above, Winnebago failed to take advantage of the opportunities to repair the RV. Aff. D. Hill (Exhibit 1); S. Mary Depo., P94, L21-P95, L17; P59, L19-14; Plaintiffs' Cure Letter (attached to S. Mary's deposition as Exhibit 60).

Therefore, Plaintiffs complied with all "notification procedures" contained in the Winnebago Warranty. Alternatively, Plaintiffs were not required to resort to the "notification procedures" contained in the Winnebago Warranty. Either way, reasonable minds could conclude that Plaintiffs' claims are not barred by failure to follow "notification procedures" contained in Winnebago's Warranty.

### 2. Plaintiffs' Remedies Are Not Limited by Winnebago's Warranty

The next issue before this Court is whether Winnebago's Warranty effectively limits Plaintiffs' remedies to the cost of repair. As outlined below, reasonable minds could conclude that Defendant's limitation of remedies is unenforceable.

Defendant's attempt to limit Plaintiffs' remedies to cost of repair is unenforceable because: (1) the warranty failed of its essential purpose, (2) there was no meeting of the minds and the "limitation of remedy" clause is unconscionable, and (3) the "limitation of remedy" fails to provide Plaintiffs with a "fair quantum of damages".

First, for the same reasons that the "notification procedures" contained in the Winnebago Warranty are unenforceable because the Winnebago Warranty failed of its essential purpose, Defendant's "limitation of remedy" clause is also unenforceable.

Second, as outlined above, a limitation of remedy that is unconscionable is void. *Baptist Mem'l Hosp.*, 308 S.W.3d at 345-346. Moreover, consequential damages may not be limited or

8

excluded where the limitation or exclusion is unconscionable. Tenn. Code Ann. § 47-2-719(3). For the same reasons that the "notification procedures" contained in the Winnebago Warranty are unenforceable because they are unconscionable, Defendant's "limitation of remedy" clause is also unconscionable and unenforceable.

Third, pursuant to Tenn. Code Ann. § 47-2-719, parties may limit or alter the measure of damages recoverable. However, as noted in official comment 1,

> Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect. However, it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article [Chapter] they must accept the legal consequence that there be at least a ***fair quantum of remedy*** for breach of the obligations or duties outlined in the contract. ... (Emphasis added).

See also *Hemmings v. Camping Time RV Ctrs*., LLC, 2017 U.S. Dist. LEXIS 168417, *1.

Here, Winnebago's limitation of remedies fails to leave Plaintiff with a "fair quantum of remedy". In fact, Plaintiffs' only option is to recover the cost to repair defects, some of which have been subject to repair multiple times and are still not fixed. This is not a fair quantum of remedy under the circumstances.

The appropriate measure of damages under the MMWA and Tennessee law is diminished value of the RV, plus incidental and consequential damages, plus reasonable attorney fees. Under the MMWA, where the warrantor has issued a limited warranty, state law dictates the applicable remedies that are available. *Watts*, 254 S.W.3d at 426. Thus, we look to Tennessee law in this case. Pursuant to Tenn. Code Ann. § 47-2-714(2),

> [t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

9

Additionally, pursuant to Tenn. Code Ann. § 47-2-714(3), a plaintiff may also recover incidental and consequential damages. Finally, Plaintiffs are also entitled to reasonable attorney fees under the MMWA. 15 USC 2010(d)(2).

Therefore, Defendant's attempt to limit Plaintiffs' remedies to cost of repair is unenforceable.

**3. Plaintiffs' MMWA Claim Does Not Fail As A Matter of Law**

**A. Reasonable Minds Could Conclude that Winnebago Violated the MMWA**

The next issue before this Court is whether reasonable minds could conclude that Winnebago violated the Magnuson Moss Warranty Act ("MMWA"). As outlined below, reasonable minds could so conclude.

The MMWA, 15 U.S.C. § 2301 et seq., provides a private right of action in federal court for consumers who are damaged by a warrantor's failure to comply with the terms of a written warranty or implied warranty. 15 U.S.C. § 2310; *Zanger v. Gulf Stream Coach, Inc.*, 2005 U.S. Dist. LEXIS 31160, *23, (E.D. Mich., November 28, 2005). Under the MMWA,

> a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title [15 USCS §§ 2301 et seq.], or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief.

15 USC 2310(d)(1). A claim under the MMWA relies on the underlying state law claim. *Bearden v. Honeywell Int'l, Inc.*, 720 F. Supp. 2d 932, 938 (M.D. Tenn., June 14, 2010)(citing *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1200 n.14 (N.D. Ga. 2005)(citing *Walsh v. Ford Motor, Co.*, 807 F.2d 1000, 1016, 257 U.S. App. D.C. 85 (D.C. Cir. 1986)); see also *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004)(noting that the Act "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action"); 15

10

U.S.C. §§ 2301(7), 2310(d)(1) (allowing suit by consumers damaged by a violation of an "implied warranty" and defining "implied warranty" as one "arising under State law")). Thus, to recover under the MMWA for the breach of express or implied warranty, Plaintiffs must assert a viable breach of express or implied warranty claim under Tennessee law and the elements are the same. *Bearden*, 720 F. Supp. 2d at 938 (citing *Fedrick*, 366 F. Supp. 2d at 1200, fn.14).

In order to establish a violation of the MMWA for breach of express warranty in Tennessee, a plaintiff has the burden of proving the following elements: the goods are subject to a warranty, the goods are nonconforming, the warrantor was given a reasonable opportunity to cure the defects, and that the warrantor failed to repair the defects within a reasonable time or within a reasonable number of attempts. *Hatley v. Crossville BNRV Sales, LLC*, 2015 U.S. Dist. LEXIS 181425, *9-10 (E.D. Tenn. November 20, 2015)(citing *Ward Adventures, LLC v. Buddy Gregg Motor Homes, Inc*., No. 3:05-CV-236, 2007 U.S. Dist. LEXIS 19890, 2007 WL 869619 (E.D. Tenn. March 20, 2007)).

Additionally, as outlined above, where a limited remedy fails of its essential purpose, all remedies available under the UCC are available to the buyer. And, as a general rule, a limited warranty fails of its essential purpose when the warrantor is unable or unwilling to repair or replace in a reasonable time.

Here, all 4 elements are met to establish a breach of warranty under state and federal law. Moreover, even if all 4 elements are not met, the warranty has failed of its essential purpose, constituting a breach of warranty.

First, there is no dispute that, as part of the purchase, the Plaintiffs' RV came with a one-year new vehicle limited warranty from the RV's manufacturer Winnebago. Winnebago Warranty (Defendant's Exhibit 1); See Defendant's Statement of Material Fact No. 3; Aff. D. Hill (Exhibit 1).

11

Second, the RV was nonconforming. Here, the RV was riddled with the following defects after Plaintiffs' purchase: leveling jack system is inoperative and warning code illuminates, divots in flooring, screen door will not latch, entry door lock hard to open, toilet sprayer does not work, side drawer will not stay closed, map light does not work, LCI steps recall, radio mount loose, cracked shower pan, electrical defect, an inoperative ceiling LED light, a malfunctioning LED light in kitchen, an LED light above the TV that was falling out, the fridge was not staying cold, the air mattress pump would not turn on, and the overhead bunk would not go up. Aff. D. Hill (Exhibit 1); CW Repair Order 9581 (Exhibit 10); CW Repair Order 11288 (Exhibit 11); CW Repair Order 12449 (Exhibit 12). And, each of the above defects substantially impaired the use and value of the RV to Plaintiffs. Aff. D. Hill (Exhibit 1); Aff. D. Bailey, ¶12 (Exhibit 16). In fact, the leveling jack system defect actually prevents the RV from being used for recreational purposes.

Third, Winnebago was given a reasonable opportunity to remedy the defects within a reasonable amount of time or a reasonable number of attempts. Here, over 4 repair attempts and 140 days in the shop, the RV's many defects were subject to repair as follows: leveling jack system is inoperative and warning code illuminates (3 repair attempts), divots in flooring (2 repair attempts), screen door will not latch (2 repair attempts), entry door lock hard to open (1 repair attempt), toilet sprayer does not work (1 repair attempt), side drawer will not stay closed (1 repair attempt), map light does not work (1 repair attempt), LCI steps recall (1 repair attempt), radio mount loose (1 repair attempt), cracked shower pan (1 repair attempt), electrical defect (1 repair attempt), an inoperative ceiling LED light (1 repair attempt), a malfunctioning LED light in kitchen (1 repair attempt), an LED light above the TV that was falling out (1 repair attempt), the fridge was not staying cold (1 repair attempt), the air mattress pump would not turn on (1 repair attempt), and the overhead bunk

would not go up (1 repair attempt). Aff. D. Hill (Exhibit 1); CW Repair Order 9581 (Exhibit 10); CW Repair Order 11288 (Exhibit 11); CW Repair Order 12449 (Exhibit 12). Additionally, Winnebago representative Steve Mary admits that the leveling jack system defect and flooring defect each should have been repaired in 1 repair attempt. S. Mary Depo., P27, L3-5; S. Mary Depo., P31, L1-3. Thus, the multiple repair opportunities that Plaintiffs provided Winnebago and its authorized dealer to repair the leveling jack system defect and flooring defect was undisputably sufficient. Finally, it is Mr. Bailey's opinion that Defendant had a reasonable opportunity to repair the RV under the circumstances in this case. Aff. D. Bailey, ¶11 (Exhibit 16).

Fourth, Winnebago either failed to remedy the defects, or failed to remedy them within a reasonable amount of time or a reasonable number of attempts. Here, it is Mr. Bailey's opinion that the following defects were not repaired within a reasonable number of repair attempts: the leveling system jack (3 repair attempts) and the flooring divots (2 repair attempts). Aff. D. Bailey, ¶10 (Exhibit 16). And, Winnebago representative Steve Mary actually agrees. S. Mary Depo., P27, L3-5; S. Mary Depo., P31, L1-3. Additionally, it is also Mr. Bailey's opinion that the defects in the RV were not repaired in a reasonable amount of time (140 days). Aff. D. Bailey, ¶11 (Exhibit 16); Expert Report (Exhibit 16B). Finally, as outlined in Plaintiffs' Response to Defendant's Statement of Facts and Concise Statement of Additional Material Fact, there are numerous reported and latent defects that have never been fixed. See Plaintiffs' Response to Defendant's Statement of Facts and Concise Statement of Additional Material Fac, No. 49, P 23; Aff. D. Bailey, ¶7 (Exhibit 16); Expert Report (Exhibit 16B).

Additionally, Plaintiffs were damaged by the breach of warranty. Plaintiffs paid more for the RV than it was worth because of the many defects, repair history, and failed repair attempts.

13

Specifically, it is Mr. Hill's opinion that the RV was only worth $23,000 when he purchased it. Aff. D. Hill (Exhibit 1). Additionally, it is Mr. Bailey's opinion that the RV was worth $78,081.90 less than Plaintiffs paid for it on the date of purchase, because of its many defects, repair history, and failed repair attempts. Aff. D. Bailey, ¶18 (Exhibit 16).

Finally, the warranty failed of its essential purpose, constituting a breach of warranty, and entitling Plaintiffs to remedy as provided in the commercial code without any warranty limitations. As outlined above, the RV was subject to repair on 4 different occasions for a total of 140 days. And, it is Mr. Bailey's opinion that many of the RV's defects were not repaired within a reasonable time, and that the cumulative repairs to the RV's many defects in total were not done within a reasonable amount of time. Aff. D. Bailey, ¶11 (Exhibit 16).

Therefore, there are genuine issues of material fact, and reasonable minds could conclude that Defendant breached its express warranty to Plaintiff under state and federal law. Therefore, Defendant's motion must be denied as to this issue.

### B.     Defendant's Arguments:

Notwithstanding, Defendant makes 3 basic arguments to avoid liability under the MMWA, each of which fails.

#### i.     Winnebago Had a Reasonable Opportunity to Repair the RV's Alleged Defects Under the Terms of the Winnebago Warranty

Defendant argues that Winnebago was never provided an opportunity to repair the RV under the Winnebago Warranty and, in fact, that Plaintiffs refused to provide Winnebago with such an opportunity. Nothing could be further from the truth.

First, Plaintiffs properly followed Winnebago's instructions when presenting their RV for repair under the Winnebago Warranty to CW– an authorized Winnebago service facility.

14

Winnebago instructs its owners that in order to obtain warranty repairs under the Winnebago warranty, the owner must: "present your motorhome to an authorized Winnebago service facility during normal business hours..." Winnebago Warranty (Defendant's Exhibit 1).

There is no dispute that CW is an "authorized Winnebago service facility". See Defendant's Statement of Undisputed Facts, Nos. 2, 52. And, evidence shows that Plaintiffs presented their RV to CW for repairs under the Winnebago Warranty on the date of purchase and then subsequently on February 26, 2016, on September 17, 2016, and on October 31, 2016– each time in compliance with the terms and instructions in the Winnebago Warranty. Aff. D. Hill (Exhibit 1); CW Repair Order 9250 (Exhibit 9); CW Repair Order 9581 (Exhibit 10); CW Repair Order 11288 (Exhibit 11); CW Repair Order 12449 (Exhibit 12).

Notwithstanding, Defendant claims that Plaintiffs were required to present the RV to Winnebago for repair at its factory and failure to do so is fatal to Plaintiffs' MMWA claim. However, Defendant's argument is contrary to the Winnebago Warranty and is merely a second attempt at arguing that Plaintiffs' failed to comply with the Winnebago Warranty "notification procedures". And, as outlined in detail above, Defendant's arguments on this issue fail.

Additionally, Defendant claims that Plaintiffs "refused to allow Winnebago an opportunity to repair the RV". Again, this is not true. Instead, Winnebago never attempted to do anything to correct the problems noted in the survey cards or the emails, never instructed Plaintiffs to contact another department, never responded to the pre-suit letter sent by Plaintiffs' attorney on Plaintiffs' behalf, and never once requested an opportunity to repair the RV at the Winnebago factory. Aff. D. Hill (Exhibit 1); S. Mary Depo., P94, L21-P95, L17; Plaintiffs' Cure Letter (attached to S. Mary's

15

deposition as Exhibit 60). Every failure to do so was an opportunity to repair the RV that Winnebago didn't take. Therefore, Defendant's first argument fails.

ii. **CW was Acting on Behalf of Winnebago in the Performance of Repairs under the Winnebago Warranty**

Next, Defendant argues that Winnebago cannot be responsible for CW's repair of the RV, even though Winnebago specifically instructs its owners that the proper procedure to obtain warranty repairs under the Winnebago Warranty is to present the RV to an authorized Winnebago service center for repairs. Defendant's argument is wholly inconsistent with its own warranty and agency law in Tennessee. Therefore, this argument, too, fails.

As outlined below, CW was an agent with apparent authority to perform repairs to Plaintiffs under the Winnebago Warranty on behalf of Winnebago. Apparent authority is "that authority which a principal holds his agent out as possessing or permits him to exercise or to represent himself as possessing, under such circumstances as to estop the principal from denying its existence." *Milliken Group, Inc. v. Hays Nissan, Inc.*, 86 S.W.3d 564, 569-570 (citing 2A C.J.S. Agency § 157(c)(1972)). Apparent authority is established through the acts of the principal, rather than those of the agent. *Id.* at 569 (citing *Bells Banking Co. v. Jackson Centre Inc.*, 938 S.W.2d 421, 424 (Tenn. Ct. App. 1996)). Apparent authority is found where the principal, by his own acts or conduct, has clothed the agent with the appearance of authority. *Id.* Having cloaked the agent with authority, the principal is accordingly estopped from denying liability for the acts of an agent acting within that authority. *Id.* (citing *Bells Banking Co.*, 938 S.W.2d at 425 (quoting *Southern Ry. Co. v. Pickle*, 138 Tenn. 238, 197 S.W. 675 (1917)). In order to establish apparent authority, the plaintiff must prove that:

> (1) the principal actually...acquiesced in [the agent's] exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent

16

authority to his or her detriment. *White v. Methodist Hosp. S.*, 844 S.W.2d 642, 646 (Tenn. Ct. App. 1992).

*Id.* If a principal has cloaked an agent with apparent authority, then the principal is liable when the agent exercises that authority. *Id.*

First Winnebago acquiesced to CW's exercise of authority by holding CW out as having authority to perform repairs to the Plaintiffs' RV on Winnebago's behalf under the Winnebago Warranty. In fact, as outlined above, Winnebago instructs its owners that in order to obtain warranty repairs under the Winnebago warranty, the owner must: "present your motorhome to an authorized Winnebago service facility during normal business hours..." Winnebago Warranty (Defendant's Exhibit 1).

As outlined in detail above, there is no dispute that CW is an "authorized Winnebago service facility", and evidence shows that Plaintiffs presented their RV to CW for repairs under the Winnebago Warranty in compliance with the terms and instructions in the Winnebago Warranty. Aff. D. Hill (Exhibit 1); CW Repair Order 9250 (Exhibit 9); CW Repair Order 9581 (Exhibit 10); CW Repair Order 11288 (Exhibit 11); CW Repair Order 12449 (Exhibit 12). Moreover, in response to Plaintiffs' October 17, 2016 email, expressing dissatisfaction with multiple defects in their RV, advising Winnebago of the failure and inadequacy of CW's repairs, and including a list of defects, Winnebago instructed Plaintiffs to contact their authorized dealer CW for repairs. October 2016 Written Notice (Exhibit 13); Aff. D. Hill (Exhibit 1). Clearly the first element is met.

Second, Plaintiffs knew that CW was an authorized Winnebago dealer because that is what CW and Winnebago told them and no one ever told them otherwise. Aff. D. Hill (Exhibit 1); October 2016 Written Notice (Exhibit 13).

17

Third, Plaintiffs relied on CW's and Winnebago's representations that CW was an authorized dealer authorized to perform warranty repairs under the Winnebago Warranty. Apparently Plaintiffs wasted 140 days, 4 repair attempts, and more, taking their RV to CW for repairs under the Winnebago warranty as specifically instructed under the Winnebago Warranty, only now for Winnebago to disclaim absolutely any liability for its authorized service center's failed repairs.

Therefore, CW was an agent with apparent authority to perform repairs to Plaintiffs' RV under the Winnebago Warranty, and Defendant's argument second fails.

### iii.  CW's Repair Attempts Under the Winnebago Limited Warranty Were Unreasonable

As outlined above, in detail, CW failed to repair many of the RV's defects under the Winnebago Warranty, and failed to repair defects within a reasonable amount of time and a reasonable number of repair attempts.

### 4.  Reasonable Minds Could Conclude That Winnebago Breached its Contract with Plaintiffs

The next issue is whether reasonable minds could conclude that Winnebago breached its contract with Plaintiffs. As outlined below, reasonable minds could so conclude.

The elements of a claim for breach of contract in Tennessee include:

> (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract.'" *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006) (quoting *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

*Bennett v. CMH Homes, Inc.*, 2012 U.S. Dist. LEXIS 33314, *10-11. Here, all 3 elements are met.

First, the Winnebago Warranty is an enforceable contract between Plaintiffs and Defendant Winnebago. Courts have held that a motor vehicle manufacturer's limited warranty is a contract

18

between it and its customers. *Miller v. GM, LLC*, 2018 U.S. Dist. LEXIS 95550, *48 (E.D. Mich. 2018). Here, as part of the purchase, the RV came with a one-year new vehicle limited warranty from the RV's manufacturer Winnebago. Winnebago Warranty (Defendant's Exhibit 1); See Defendant's Statement of Material Fact No. 3. Therefore, the Winnebago Warranty is an enforceable contract between Plaintiffs and Winnebago regarding repair of the RV. As such, the first element is met.

Second, Winnebago failed to perform under the warranty by refusing to cover the flooring repair under the Winnebago Warranty, amounting to a breach of contract. Here, as outlined in the Winnebago Warranty,

> Winnebago promises that any part of this motor home - except those identified in paragraph entitled "Excluded from Basic Coverage" - found to be defective in material or workmanship shall be repaired or replaced at no cost to the owner for parts, materials, or labor...

Winnebago Warranty (Defendant's Exhibit 1). Further, according to the Winnebago Warranty, the following parts are "Excluded from Basic Coverage":

> Parts, accessories, or equipment installed, or modifications or alterations made after the motorhome leaves the factory, including items installed and modifications or alterations made by a Winnebago dealer or third-party; a motorhome used for purposes other than recreational use, a motorhome used outside the U.S.A. or Canada; recommended maintenance or adjustments; service or maintenance items (such as, seals, sealants, windshield wiper blades, lubricants, fluids, and filters); replacement parts and repairs required because of improper load distribution, accident, collision, vandalism, abuse, misuse, neglect, fire, flood, normal wear, or improper or inadequate maintenance, rust or corrosion, exposure to the elements; a part or component covered under a warranty issued by its manufacturer (for example, the chassis, drivetrain, wheels, tires; electronics and appliances); and, except as noted, costs incurred in transporting or presenting the motorhome for repairs or service under this NVLW.

Winnebago Warranty (Defendant's Exhibit 1). Here, both Winnebago representative Steve Mary and Plaintiff's expert witness Dennis Bailey observed the flooring defect first hand during their

19

respective inspections of the RV. S. Mary Depo., P30, L6-8; Aff. D. Bailey, ¶7 (Exhibit 16). And, a plain reading of the Winnebago Warranty reveals that the flooring defect is not specifically "Excluded from Basic Coverage". See Winnebago Warranty (Defendant's Exhibit 1).

Notwithstanding, Winnebago refused to cover the cost of repair or replacement of the flooring defect under the Winnebago Warranty during the last repair, because it felt that CW's prior repair of the flooring defect under the Winnebago Warranty was substandard. D. Hill Depo., P93, L18-23; S. Mary Depo, P80, L24-P84, L6; CW Repair Order 12449 (Exhibit 12). When it refused to cover the cost of repair or replacement of the flooring defect under the Winnebago Warranty during the last repair do so, Winnebago breached its contract with Plaintiffs regarding repair of the RV, and the second element is met.

Third, Plaintiffs were damaged by Defendant's breach of contract regarding repair of the RV. Specifically, the flooring defect in the Plaintiffs' RV is still present and was never repaired due to Defendant's refusal. D. Hill Depo., P121, L12-23; S. Mary Depo., P30, L6-8; Aff. D. Bailey, ¶10 (Exhibit 16). And, these defects substantially impair both the use and value of the RV to Plaintiffs. Aff. D. Bailey, ¶12 (Exhibit 16); Aff. D. Hill (Exhibit 1). As such, the third element is met.

Notwithstanding, Defendant argues that Plaintiffs' breach of contract claim fails because: (1) there is not contract between the parties, (2) Winnebago had a valid basis for denying the flooring defect repair, and (3) Plaintiffs failed to provide Winnebago an opportunity to repair the RV. Each of these arguments fails.

First, as outlined above, the Winnebago Warranty constituted a contract between Winnebago and Plaintiffs regarding repair of the RV. See Winnebago Warranty (Defendant's Exhibit 1). Therefore, Defendant's first argument fails.

20

Second, a plain reading of the Winnebago Warranty, including the "Excluded from Basic Coverage" section, reveals that Winnebago does not have the right under the Winnebago Warranty to deny a "come back" repair. See Winnebago Warranty (Defendant's Exhibit 1). And, there is absolutely no evidence that the flooring defect was the result of "normal wear". Therefore, Defendant's second argument fails.

Third, as outlined in detail above, Plaintiffs did not fail to provide Winnebago with an opportunity to repair the RV. But, Winnebago failed to take advantage of those opportunities to repair the RV. Aff. D. Hill (Exhibit 1); S. Mary Depo., P94, L21-P95, L17; Plaintiffs' Cure Letter (attached to S. Mary's deposition as Exhibit 60). Every failure to do so was an opportunity to repair the RV that Winnebago didn't take. Therefore, Defendant's third argument fails.

Therefore, reasonable minds could conclude that Winnebago breached its contract with Plaintiffs and Defendant's motion must be denied as to this claim.

**5.     Reasonable Minds Could Conclude that Winnebago Breached its Express Warranties to Plaintiffs**

As outlined above, a claim under the MMWA relies on the underlying state law claim. Thus, to recover under the MMWA for the breach of express or implied warranty, Plaintiffs must assert a viable breach of express or implied warranty claim under Tennessee law and the elements are the same. Therefore, for the reasons outlined in the MMWA section of this brief, Defendant breached its express warranty under Tennessee law and thereby violated the MMWA.

**6.     Reasonable Minds Could Conclude that Winnebago Breached its Implied Warranty of Merchantability to Plaintiffs**

21

The next issue before this Court on Defendant's motion is whether reasonable minds could conclude that Defendant Winnebago breached its implied warranty of merchantability to Plaintiffs. As outlined below, reasonable minds could so conclude.

In Tennessee, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Tenn. Code Ann. § 47-2-314(1); *Smith v. TimberPro Inc.*, 2017 Tenn. App. LEXIS 163, *13-15; *Hatley, LLC*, 2015 U.S. Dist. LEXIS 181425 at *14-15. For goods to be merchantable, they must at least be fit for the ordinary purposes for which such goods are used. Tenn. Code Ann. § 47-2-314(2)(c).

Here, the ordinary, intended purpose of this RV is recreational use. S. Mary Depo., P9, L10-13. And, this RV was not fit for its ordinary purpose of recreational use at the time it was purchase and is still not today.

First, evidence reveals that the leveling jack defect has been present since before the RV was purchased and prevents the RV from being used for recreational purposes.

The purpose of the leveling jack system is to level up the box portion of the RV when the RV is in a stationary position. S. Mary Depo., P17, L24-P18, L1. The problem with the leveling jack system in this particular RV is that the error light illuminates and the leveling jacks will not extend to level the unit. Aff. D. Hill (Exhibit 1). When the error light illuminates, the RV should not be driven, but should instead be returned to an authorized dealer for service. D. Hill Depo., P109, L13-24; Owner's Manual, Section 10-7, 10-8 (Exhibit 8); S. Mary Depo., P21, L2-12. Additionally, since the first step for extending the RV's slideout rooms is to level the RV, the malfunctioning jacks also prevent the RV's slideout rooms from being used. Owner's Manual, Section 10-2 (Exhibit 19).

22

Plaintiffs first experienced problems with the RV's leveling jack system during their January 2016 test drive, and then again during their walk through on February 5, 2016. D. Hill Depo., P35, L4-19; P41, L14-16; P46, L10-16; P49, L4-P51, L10; Aff. D. Hill (Exhibit 1). Plaintiffs took delivery of the RV on February 6, 2016, after being assured by CW that the leveling jack system was fixed. *Id.* However, when they attempted to operate the leveling jack system about 1-2 weeks later on their first camping trip, the leveling jack system would not work and the error light again illuminated. *Id*. And, the leveling jack system is still not working today. Aff. D. Hill (Exhibit 1); Aff. D. Bailey, ¶7 (Exhibit 16).

Thus, due to the malfunctioning jacks, the RV should not be driven, the box of the RV cannot be leveled, and the slideout rooms cannot be utilized. And, the RV certainly cannot be used for recreational purposes under those circumstances.

Second, evidence also reveals that there were at least 14 different defects present when the RV was delivered to CW from the Winnebago factory. S. Mary Depo., P39, L19-22; Winnebago Packing Card (attached to S. Mary's deposition as Exhibit 63).

Third, according to both Mr. Bailey and Plaintiffs, the RV is not fit for its ordinary recreational and camping use. Aff. D. Hill (Exhibit 1); Aff. D. Bailey, ¶13 (Exhibit 16).

Notwithstanding, Defendant argues that Plaintiffs' implied warranty of merchantability claim fails because no defects existed in the RV at the time of sale. However, as outlined above, that is simply not the case.

Therefore, reasonable minds could conclude that Winnebago breached its implied warranty of merchantability under Tennessee law, and Defendant's motion must be denied as to that claim.

### 7. Reasonable Minds Could Conclude that Winnebago Breached its Implied Warranty of Fitness to Plaintiffs

23

The next issue before this Court on Defendant's motion is whether reasonable minds could conclude that Defendant Winnebago breached its implied warranty of fitness to Plaintiffs. As outlined below, reasonable minds could so conclude .

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose. Tenn. Code Ann. § 47-2-315; *Smith*, 2017 Tenn. App. LEXIS 163 at *13-15; *Hatley v. Crossville BNRV Sales, LLC*, 2015 U.S. Dist. LEXIS 181425, *14-15.

Here, as Defendant freely admits in its motion at page 21-22, Plaintiffs purchased the RV for recreational purposes, including traveling long distances, camping, and sleeping multiple people. Depo. D. Hill, P28, L4-8; P30, L18-25, P31, L1-16. And, Winnebago is aware that the intended purpose of its RVs is recreational use. S. Mary Depo., P9, L10-13. Therefore, for the same reasons that this RV was not fit for its ordinary, recreational purpose, it was also not fit for Plaintiffs' specific recreational purpose, including traveling long distances, camping, and sleeping multiple people.

Notwithstanding, Defendant argues that Winnebago could not have had any knowledge of Plaintiff's particular purpose. However, as Winnebago's representative Mr. Mary admitted in his deposition, Winnebago is well aware that the intended purpose of its RVs is recreational use. Defendant also argues that Plaintiffs' claim for breach of implied warranty of fitness fails because their specific purpose is the same as the ordinary purpose. However, Defendant's argument is not supported by Tenn. Code Ann. § 47-2-315, or is Plaintiffs claim barred by it.

24

Therefore, reasonable minds could conclude that Winnebago breached its implied warranty of fitness under Tennessee law, and Defendant's motion must be denied as to that claim.

## C.    Conclusion

Therefore, there are genuine disputes of material fact and, when viewing the facts in a light most favorable to Plaintiffs, reasonable minds could come to differing conclusions as to all claims and all issues.

Respectfully submitted,

/s/ Ronald L. Burdge
RONALD L. BURDGE
Attorney for Plaintiffs Pro Hac
8250 Washington Village Drive
Dayton, Ohio 45458-1850
Telephone:     937.432.9500
Email:          Ron@BurdgeLaw.com

Brent S. Snyder
Attorney for Plaintiffs
2125 Middlebrook Pike
Knoxville, TN 37921
Telephone:     865.546.2141
Email: brentsnyder77@gmail.com

## CERTIFICATION OF SERVICE

This will certify that a true and accurate copy of Plaintiffs' *Memorandum in Opposition to Defendant's Motion for Summary Judgment* was served upon Benjamin Reese & Kaley Bell, Leitner, Williams, Dooley & Napolitan, PLLC, 200 W Martin Luther King Boulevard, Chattanooga TN 37402, counsel for Defendant Winnebago, on September 14, 2018, electronically by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/Ronald L. Burdge
RONALD L. BURDGE   Pro Hac
Attorney for Plaintiffs

Z:\data\Hill, Tammie\Etc\Etc Memo In Opp to MSJ 091418 ss.wpd