IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

TAMMIE HILL, et al.,

     PLAINTIFFS

    - VS. -

WINNEBAGO INDUSTRIES, INC.

    DEFENDANT

CASE NO. 3:17-cv-0678

JUDGE WILLIAM L. CAMPBELL, JR.
MAGISTRATE JEFFERY S. FRENSLEY

PLAINTIFFS' RESPONSE TO
DEFENDANT'S STATEMENT OF
MATERIAL FACTS <u>AND</u> CONCISE
STATEMENT OF ADDITIONAL
MATERIAL FACTS

---

Now come Plaintiffs, pursuant to LR 56.01(c), and hereby submit their Response to

Defendant Winnebago Industries, Inc.'s Statement of Material Facts in Support of Defendant's

Motion for Summary Judgment *and* Concise Statement of Additional Material Facts.

**A.    RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**

For their Response to Defendant Winnebago Industries, Inc.'s Statement of Material

Facts in Support of Defendant's Motion for Summary Judgment, Plaintiffs state as follows:

1.    On or about February 5, 2016, Plaintiffs traveled to Camping World

("CW") in Nashville, Tennessee, and purchased a 2016 Winnebago Sunstar LC 30T (the "RV").

(Doc 1, ¶12)

<u>**RESPONSE:**</u> Disputed. Plaintiffs first traveled to Camping World in Nashville,

Tennessee on January 16, 2016 and: (1) test drove the 2016 Winnebago Sunstar LC 30T, (2)

made the decision to purchase the 2016 Winnebago Sunstar LC 30T, (3) negotiated the purchase

Page -1-

price of the 2016 Winnebago Sunstar LC 30T, (4) made a $2,000 down payment towards the purchase of the 2016 Winnebago Sunstar LC 30T, and (5) signed various documents related to the purchase of the 2016 Winnebago Sunstar LC 30T. D. Hill Depo., P25, L17-19; P31, L20-P33, L12; P33, L22-P38, L12; T. Hill Depo., P19, L10-P21, L24; Deposit Receipt (Exhibit 3); First Place Finish Limited Warranty (Exhibit 4); Crystal Fusion Windshield Protection Limited Guarantee Agreement (Exhibit 5); Good Sam Elite Membership (Exhibit 6); Good Sam Tire and Wheel Service Contract (Exhibit 7).

2.     CW is an authorized Winnebago repair facility. (Patrick Dep. 14:21-22).

**RESPONSE:** Undisputed.

3.     As part of the purchase, the RV came with a one-year new vehicle limited warranty ("Limited Warranty"). (Doc. 1, ¶ 12) (Exh. 1).

**RESPONSE:** Undisputed that the RV came with a one-year new vehicle limited warranty from Winnebago, and that the warranty is attached to Defendant's motion as Exhibit 1. However, disputed that the one-year new vehicle limited warranty was made available to Plaintiffs prior to their purchase of the RV.  Instead, Camping World told Plaintiffs that the RV came with a 1 year warranty from Winnebago and provided Plaintiffs with a copy of the attached Winnebago Brochure at the time of sale, which summarized the limited warranty on the back side. D. Hill Depo., P24, L1-8, L22-P25, L3; Winnebago Brochure (Exhibit 2).

4.     At the time of sale, it was common practice for CW to provide information to a customer pertaining to Winnebago's Limited Warranty in the packet of sales materials. (Bonine Dep. 57:1-18).

**RESPONSE:** Disputed.  Defendant misquotes the deposition testimony. What Mr. Bonine actually states in his deposition is that it would be normal practice for a salesman to tell

the consumer that the new RV comes with a factory warranty, not to provide the consumer with warranty information in any "packet of sales materials". R. Bonine Depo. P57, L1-18.

5.　　Plaintiffs do not dispute they were informed of or knew about the Limited Warranty prior to purchasing the RV and believed they received a copy of the Limited Warranty upon purchase (D. Hill Dep. 37:11-20).

**RESPONSE:** Undisputed that Plaintiffs knew that the RV came with a 1 year limited warranty from Winnebago. However, disputed that Plaintiffs received a copy of the Limited Warranty "upon purchase". Instead, Camping World told Plaintiffs that the RV came with a 1 year warranty from Winnebago and provided Plaintiffs with a copy of the attached Winnebago Brochure at the time of sale, which summarized the limited warranty on the back side. D. Hill Depo., P24, L1-8, L22-P25, L3; P111, L2-13; Winnebago Brochure (Exhibit 2). They did not receive a copy of the Limited Warranty until after purchase, but got it sometime later. D. Hill Depo., P111, L2-13.

6.　　At the time of sale, Plaintiffs also signed the sale and purchase agreement packet documents, and pursuant to the language contained in the Additional Terms and Conditions document, Plaintiffs acknowledged the terms contained therein, including provisions stating CW made no warranties with respect to the RV, that Plaintiffs received a copy of the warranties, read, and understood them, and that CW was not an agent of any manufacturer. (See Exh. 2).

**RESPONSE:** Undisputed that Plaintiffs signed the purchase agreement (Defendant's Exhibit 2), but Plaintiffs dispute: (1) the characterization of the document as a "packet documents", (2) that Plaintiffs acknowledged any terms contained on the back side of the purchase agreement, and (3) that the "Additional Terms and Conditions" state that "CW made no warranties with respect to the RV, that Plaintiffs received a copy of the warranties, read, and

understood them, and that CW was not an agent of any manufacturer".

Instead, the purchase agreement is a single document with a front and back side, the "Additional Terms and Conditions" being on the back side. Aff. D. Hill (Exhibit 1). Plaintiffs were never provided the opportunity to read the back side of the purchase agreement, the "Additional Terms and Conditions" on the back side were never explained to Plaintiffs nor were they referenced by Defendant's authorized dealer CW, and Plaintiffs were not even aware that the purchase agreement had a back side. Aff. D. Hill (Exhibit 1).

Additionally, Plaintiffs were actually advised by CW at the time of sale and prior to that CW was an authorized Winnebago dealer and no one ever told them otherwise. Aff. D. Hill (Exhibit 1).

Finally, what the "Additional Terms and Conditions" actually state, in small type on the back side of the purchase agreement, is that:

> Buyer has read and understood a statement of the type of warranty covering the unit purchased...dealer is not an agent of the manufacturer for warranty purposes...dealer makes no warranties whatsoever regarding this unit or any component or any appliance contained therein...

Thus, Defendant inaccurately characterizes the language to which it refers in the "Additional Terms and Conditions" on the back side of the purchase agreement. Winnebago Warranty (Defendant's Exhibit 1).

7.     The Limited Warranty is provided by Winnebago and is applicable to the RV. (Exh. 1).

**RESPONSE:** Undisputed.

8.     Under the "Basic Coverage" provision of the Limited Warranty, Winnebago promises to repair or replace, "at no cost to the owner for parts, materials, or labor so long as the

Page -4-

motorhome has been used exclusively for recreational purposes and maintained as recommended in the Operator's Manual," any part of the RV that is not excluded from such coverage. (Exh. 1).

**RESPONSE:** Undisputed that the Winnebago Warranty speaks for itself, and that Defendant has taken a portion of a sentence out of the Warranty and placed it in quotes. Disputed that the language outside of the quotes is contained fully within the Winnebago Warranty. The "Basic Coverage" section of the Winnebago Warranty reads as follows:

> Winnebago supplied and installed parts: Winnebago promises that any part of this motor home - except those identified in paragraph entitled "Excluded from Basic Coverage" - found to be defective in material or workmanship shall be repaired or replaced at no cost to the owner for parts, materials, or labor so long as the motorhome has been used exclusively for recreational purposes and maintained as recommended in the Operator's Manual.

Winnebago Warranty (Defendant's Exhibit 1).

9.    Basic coverage begins on the date of retail delivery of the RV to the purchaser and is in effect for twelve (12) months from that date. (Exh. 1).

**RESPONSE:** Undisputed that the Warranty speaks for itself, and that Defendant has paraphrased a portion of the Warranty. Disputed that the language outside of the quotes is contained fully within the Winnebago Warranty. The "Basic Coverage Period" section of the Winnebago Warranty reads as follows:

> Basic coverage begins on the date of retail delivery...Basic coverage ends after 12 months or when the vehicle's odometer registers 15,000 miles...whichever is sooner.

Winnebago Warranty (Defendant's Exhibit 1).

10.    In this case, at the latest, Plaintiffs took possession of the RV on or around February 2016 meaning the basic coverage for the RV as described in the Limited Warranty ended in February 2017. (D. Hill Dep. 45:19-24)

Page -5-

**RESPONSE:** Disputed as to the "at the latest" and "on or around" language. Plaintiffs took possession of the RV on February 6, 2016. D. Hill Depo., P44, L11-14; Aff. D. Hill (Exhibit 1). Thus, the warranty coverage contained in the Winnebago Warranty would end after February 6, 2017. See Winnebago Warranty (Defendant's Exhibit 1).

11.    To obtain warranty repairs—meaning those repairs or replacements which will be done at no cost to the owner—the owner must present his or her motorhome to "an authorized Winnebago service facility during normal business hours and provide a written list of items to be inspected or repaired to the service facility and Winnebago." (Exh. 1).

**RESPONSE:**  Undisputed that the Winnebago Warranty speaks for itself, and that Defendant has taken a portion of a sentence out of the Warranty and placed it in quotes. Disputed that the language outside of the quotes is contained fully within the Winnebago Warranty.  The first sentence of the "Obtaining Warranty Repairs" section of the Winnebago Warranty reads as follows:

> Except as otherwise provided herein, to obtain warranty repairs you must, at your own cost, present your motorhome to an authorized Winnebago service facility during normal business hours and provide a written list of items to be inspected or repaired to the service facility and Winnebago.

Winnebago Warranty (Defendant's Exhibit 1).

12.    In the event the owner "feel[s] the repairs made by an authorized service center fail or are otherwise inadequate, [the owner] must contact Winnebago Owner Relations in writing and advise them of the failure or inadequacy, including a list of the defects, and provide Winnebago an opportunity to repair the motorhome prior to claiming a breach of this warranty." (Exh. 1) (emphasis in original).

Case 3:17-cv-00678   Document 36   Filed 09/14/18   Page 6 of 33 PageID #: 571

**RESPONSE:** Undisputed that the Winnebago Warranty speaks for itself, and that

Defendant has taken a portion of a sentence out of the Warranty and placed it in quotes.

Disputed that the language outside of the quotes is contained fully within the Winnebago

Warranty. The second sentence of the "Obtaining Warranty Repairs" section of the Winnebago

Warranty reads as follows:

> In the event that you feel the repairs made by an authorized service center fail or are otherwise inadequate, you must contact Winnebago Owner Relations in writing and advise them of the failure or inadequacy, including a list of the defects, and provide Winnebago an opportunity to repair the motorhome prior to claiming a breach of this warranty.

Winnebago Warranty (Defendant's Exhibit 1).

13.     Furthermore, the Limited Warranty states, "Your sole and exclusive remedy in

proceeding for a breach of this [Limited Warranty] is money damages in an amount equal to the

reasonable cost for material and labor necessary to repair or replace parts that should have been

done under the [Limited Warranty], but were not." (Exh. 1).

**RESPONSE:** Undisputed that the Winnebago Warranty speaks for itself, and that

Defendant has paraphrased a portion of the Warranty and placed it in quotes. Disputed that the

language both inside and outside of the quotes is contained fully within the Winnebago

Warranty. The first sentence of the "Sole and Exclusive Remedy/Damages Section" section of

the Winnebago Warranty reads as follows:

> Your sole and exclusive remedy in a proceeding for breach of this NVLW is money damages in an amount equal to the reasonable cost for material and labor necessary to repair or replace parts that should have been done under this NVLW, but were not.

Winnebago Warranty (Defendant's Exhibit 1).

Page -7-

14.     Similarly, it states, "Your sole and exclusive remedy in proceeding for a breach of any applicable implied warranty is money damages in an amount equal to the reasonable cost for material and labor necessary to correct the defect or defects upon which the finding of breach of implied warranty is based." (Exh. 1).

**RESPONSE:**  Undisputed that the Winnebago Warranty speaks for itself, and that Defendant has paraphrased a portion of the Warranty and placed it in quotes.  Disputed that the language both inside and outside of the quotes is contained fully within the Winnebago Warranty.  The second sentence of the "Sole and Exclusive Remedy/Damages Section" section of the Winnebago Warranty reads as follows:

> Your sole and exclusive remedy in a proceeding for breach of any applicable implied warranty is money damages in an amount equal to the reasonable cost for material and labor necessary to correct the defect or defects upon which the finding of breach of implied warranty is based.

Winnebago Warranty (Defendant's Exhibit 1).

15.     Shortly after Plaintiffs took possession of the RV, Plaintiffs experienced issues with the leveling jacks—a luxury feature that allows a consumer to level the box of the RV so that people walking inside are walking on what is perceived to be a level surface. (D. Hill Dep. 49:4-10, 50:20-25, 51:1-4) (Mary Dep. 17:13-18).

**RESPONSE:** Undisputed that Plaintiffs experienced problems with the leveling jack system, but disputed that Plaintiffs first experienced those issues after taking possession of the RV and disputed that the leveling jack system is a luxury feature.

The problem with the leveling jack system is that the error light illuminates and the leveling jacks will not extend to level the unit. Aff. D. Hill (Exhibit 1). Plaintiffs first

Page -8-

experienced problems with the RV's leveling jack system during their January 2016 test drive, and then again during their walk through on February 5, 2016. D. Hill Depo., P35, L4-19; P41, L14-16; P46, L10-16; P49, L4-P51, L10; Aff. D. Hill (Exhibit 1). Plaintiffs took delivery of the RV on February 6, 2016, after being assured by CW that the leveling jack system was fixed. Id. They did not attempt to operate the leveling jack system again until they went on a short camping trip to Jellystone about 1-2 weeks later. Id. At that time, the error message for the leveling jack system illuminated and the leveling jack system would not operate. Id.

The leveling jack system is not a luxury feature. In fact, according to the owner's manual, if the leveling jack error light comes on, then the RV should not be driven. D. Hill Depo., P109, L13-24; Owner's Manual, Section 10-7, 10-8 (Exhibit 8). Instead, the error light instructs the owner to return the RV to an authorized dealer for service and it says that because the RV needs to go in for service. S. Mary Depo., P21, L2-12.

16. In late February 2016, Plaintiffs took the RV to CW for repairs to the leveling jacks as well as screen door latch, entry door lock, toilet sprayer, side drawer, map light, and LCI steps. (D. Hill Dep. 49:9-10, 51:25, 52:1-16).

**RESPONSE:** Undisputed. See CW Repair Order 9581 (Exhibit 10); Aff D. Hill (Exhibit 1).

17. The RV remained in CW's possession from February 26, 2016 to March 19, 2016, for warranty-related repairs (the "First Warranty Repair Period"). (Doc. 1, ¶ 17).

**RESPONSE:** Undisputed that the RV was taken to Defendant's authorized dealer CW for repairs on February 26, 2016 and that repairs were completed 25 days later on March 21, 2016. CW Repair Order 9581 (Exhibit 10); Aff D. Hill (Exhibit 1). However, disputed that the

cited authority supports Defendant's contention and disputed that the RV only remained in CW's possession until March 19, 2016. Instead, Plaintiffs picked the RV up sometime after March 21, 2016. Aff D. Hill (Exhibit 1); D. Hill Depo, P90, L20-24.

18.     Sometime thereafter, Plaintiffs took a nearly 3,560-mile trip to California and at least one shorter trip to Cedar Creek before returning the RV to CW for repairs to the vinyl flooring, radio mount, and crack in the shower pan (the "Second Warranty Repair Period"). (D. Hill Dep. 57:21-25, 58:1-9, 59:7-15).

**RESPONSE:** Undisputed that Plaintiffs took a trip to California to visit their children and grandchildren, but disputed as to the mischaracterization of the trip and dispute that Plaintiffs took a shorter trip to Cedar Creek during that time period.

Instead, Plaintiffs left on March 29, 2016 for a trip to California to visit their children and grandchildren, and returned on April 6, 2016. D. Hill Depo., P57, 21-P58, L5. After the California trip, Plaintiffs went on a short 62 mile trip to Barren Lake, Kentucky. D. Hill Depo., P63, L13-24. During theses trips, they discovered a defect in the flooring, a crack in the shower pan, and the outside radio panel fell off. D. Hill Depo., P58, L6-P59, L15; P65, L20-22. Plaintiffs kept a list of problems as they were going, per CW's recommendation, so that they could bring the RV in for repair of everything at one time. D. Hill Depo, P59, L7-15; Aff. D. Hill (Exhibit 1).

19.     Because Plaintiffs anticipated another trip to California, Plaintiffs called CW to determine a convenient time for the flooring repairs based on the vinyl floor repair vendor's schedule. (D. Hill Dep. 62:23-25; 63:1-4; 66:5-11).

**RESPONSE:** Disputed.  Plaintiffs contacted CW to make an appointment for repair of 3 defects– the vinyl flooring, the radio mount, and the cracked shower pan.  And, CW told them

Page -10-

when to bring the RV in for an appointment based upon CW's schedule. D. Hill Depo., P62, L23-P63, L4; P66, L21-P67, L23; Aff. D. Hill (Exhibit 1).

20.     Though the Complaint states the RV remained in CW's possession from July 22, 2016 to September 22, 2016, during the Second Warranty Repair Period, Plaintiffs agree they took possession of the RV while awaiting warranty authorization and scheduled repair work to the vinyl floor. (Doc. 1, ¶ 18) (D. Hill Dep. 71:24-25; 72:1-5).

**RESPONSE:** Undisputed that the Complaint speaks for itself. Disputed as to the dates at CW for repairs and the decision to retake possession of the RV while awaiting repairs.  Plaintiffs presented the RV for repair of the vinyl flooring, the radio mount, and the cracked shower pan at CW on July 22, 2016. CW Repair Order 11288 (Exhibit 11); D. Hill Depo., P67, L3-23; Plaintiffs' Discovery Responses, Interrogatory No. 3 (Exhibit 15). CW took photographs of the flooring to send to Winnebago and then instructed Plaintiffs to take the RV home until CW was ready to perform the repairs. D. Hill Depo., P67, L3-23. Plaintiffs do not recall what date they took the RV back home. D. Hill Depo., P67, L24-P68, L2.  Plaintiffs returned the RV to CW on September 17, 2016, and it was there for repairs until at least September 24, 2016. D. Hill Depo., P74, L2-6. During the time that the RV was awaiting repairs at Plaintiffs' home, it was parked. D. Hill Depo., P72, L6-8. During that same time period, Plaintiff Dan Hill had to take additional photographs for CW to be submitted to Winnebago. D. Hill Depo., P68, L7-13; Plaintiffs' Discovery Responses, Interrogatory No. 3 (Exhibit 15).

21.     After returning the RV to CW for the scheduled flooring repairs, Plaintiffs agree the repairs to the flooring took less than eight days to complete, and Plaintiffs retook possession of the RV. (D. Hill Dep. 73:23-25, 74:1-9).

Page -11-

**RESPONSE:** Undisputed.

22.     After their trip in the RV to Albuquerque, New Mexico, Boulder, Colorado, and California, Plaintiffs returned the RV to CW for repairs to the leveling jacks, inverter, screen door latch, LED lights, refrigerator unit, air mattress, upper bunk, and issues with the flooring repair (the "Third Warranty Repair Period"). (D. Hill Dep. 82:21-25, 83:20-22, 84:3-12, 24-25, 85:2-5,10-19, 86:1-4).

**RESPONSE:** Disputed that Plaintiffs went to Boulder, Colorado during that trip– they did not. Aff. D. Hill (Exhibit 1).  Undisputed that Plaintiffs went on a trip to California from late September 2016 until October 2016 and presented the RV for repair of the above defects when they returned from the trip.

23.     The RV remained in CW's possession for repairs from October 31, 2016 to January 15, 2017, for warranty-related repairs. (Doc. 1, ¶ 18).

**RESPONSE:** Disputed. Plaintiffs actually contacted Winnebago about the RV's many defects and CW's failure to repair them on October 17, 2016. Aff. D. Hill (Exhibit 1); October 2016 Written Notice to Winnebago (Exhibit 13). CW responded on October 19, 2016 instructing Plaintiffs to contact their authorized dealer for repairs. October Email from Winnebago (Exhibit 13).  Plaintiffs telephoned CW on October 19, 2016 to schedule repairs, and CW told Plaintiffs that they could not bring the RV in for repairs until October 31, 2016. Aff. D. Hill (Exhibit 1); D. Hill Depo., P89, L19-25. On January 4, 2017, Plaintiffs were notified by CW that the RV had been damaged on their property. D. Hill Depo., P91, L14-P92, L12.  Thereafter, Plaintiffs were notified by CW at the end of February 2017 that Winnebago was not willing to authorize the flooring repair. D. Hill Depo., P93, L18-P94, L9. Plaintiffs were never provided with a reason for

Page -12-

Winnebago's denial. D. Hill Depo., P94, L4-9. The RV remained at CW for repairs until CW called and told Plaintiffs to pick the RV up in December of 2017. D. Hill Depo., P94, L17-P96, L11.

24.     During Plaintiffs depositions, it was discovered that CW actually maintained possession of the RV from October 31, 2016 until December 2017. (D. Hill Dep. 95:10-12).

**RESPONSE:** Undisputed that the RV remained at CW until December of 2017, but unknown whether CW and Winnebago were in contact regarding same. Aff. D. Hill (Exhibit 1).

25.     While in CW's possession but before February 2017, Plaintiffs were notified that a customer had sideswiped the RV's mirror but the damage was repaired at no cost to Plaintiffs. (D. Hill Dep. 91:8-24, 92:1-7).

**RESPONSE:** Undisputed.

26.     Prior to January 15, 2017, CW informed Plaintiffs that Winnebago denied CW's warranty repair request to correct the inadequate repair to the vinyl flooring done during the Second Warranty Repair Period but that CW was seeking approval to absorb the cost and remedy the divot repair. (D. Hill Dep. 95:25, 96:1-6).

**RESPONSE:** Disputed. Plaintiffs were not notified by CW until the end of February 2017 that Winnebago was not willing to authorize the flooring repair. D. Hill Depo., P93, L18-P94, L9; Aff. D. Hill (Exhibit 1).

27.     However, before receiving this phone call, Plaintiffs were already seeking legal advice. (D. Hill Dep. 96:7-22).

**RESPONSE:** Undisputed.

28.     On or around October 17, 2016, prior to seeking legal advice, Plaintiffs contacted

a Winnebago representative via email to express dissatisfaction with multiple alleged defects in the RV. (See Exh. 3) (D. Hill Dep. 97:5-25, 98:1-7).

**RESPONSE:** Undisputed that Plaintiffs sent the written notice by email. However disputed as to the content of the email. The email not only expressed dissatisfaction with multiple defects, but also advised Winnebago of the failure and inadequacy of CW's repairs, and included a list of defects. October 2016 Written Notice to Winnebago (Exhibit 13)**.**

29.    Plaintiffs used an online link or portal on the Winnebago website to send the email and did not contact a particular department. (D. Hill Dep. 98:14-19).

**RESPONSE:** Undisputed.

30.    Plaintiffs also state they sent out survey cards they received from Winnebago with information pertaining to issues with their RV—which were later explained in Winnebago's emails to have been received by Winnebago's marketing department. (Exh. 3) (D. Hill Dep. 115:21-25, 116:1-4).

**RESPONSE:** Undisputed that Plaintiffs sent multiple survey cards expressing their dissatisfaction with the RV and the repairs. However dispute Defendant's characterization of its response. Instead, Winnebago alleged that the survey cards are handled directly by the Winnebago marketing department, which does not forward the information to the Winnebago Service Advisors unless "a number of issues are noted". October Email from Winnebago (Exhibit 13).

31.    On October 19, 2016, a Winnebago representative provided Plaintiffs with instructions to create a list of unresolved issues and report them to CW. (Exh. 3) (D. Hill Dep. 98:8-25, 99:1).

Page -14-

**RESPONSE:** Undisputed.

32.     On December 16, 2016, Plaintiffs sent another email to the same contact at Winnebago Industries Service Administration a second email regarding their dissatisfaction with CW's repair time of their RV. (Exh. 4).

**RESPONSE:** Undisputed that Plaintiffs sent the written notice by email.  However disputed as to the content of the email.  The email not only expressed dissatisfaction with the length of the repair time, but also advised Winnebago of the failure and inadequacy of CW's repairs, and included a list of defects. December 2016 Written Notice to Winnebago (Exhibit 14)**.**

33.     On December 19, 2016, Winnebago's representative responded to Plaintiffs and notified them that Winnebago had taken action to investigate their repair history and contact CW for an update. (Exh. 4).

**RESPONSE:** Undisputed.

34.     Plaintiffs interpreted the email to mean that Winnebago had no knowledge or explanation for CW's delayed repairs but were trying to determine the cause for the delays. (D. Hill Dep. 115:2-9).

**RESPONSE:** Disputed. What was actually stated in the deposition was as follows:

    Q.     So it was your understanding, based on that E-mail, that they didn't know
           what was causing the delays either?
    A.     That's the way that I read it.

D. Hill Depo., P115, L6-9. And, Plaintiffs felt that Winnebago should be aware of the issues, problems and delays that Plaintiffs were experiencing since Winnebago had received multiple emails and multiple responses to survey cards. Aff. D. Hill (Exhibit 1); D. Hill Depo., P115, L21-P116, L4.  But Winnebago never attempted to do anything to correct the problems noted in

the emails or the survey cards, never instructed Plaintiffs to contact another department, and never requested an opportunity to repair the RV at their factory. Aff. D. Hill (Exhibit 1).

35.     Aside from the grievance emails (Exh. 3, Exh. 4), regarding alleged defects and repair delays, Plaintiffs never spoke to anyone at Winnebago about their warranty issues or attempted to contact any other department. (D. Hill Dep. 111:23-25, 112:1, 116:9-18).

**RESPONSE:** Disputed.  Plaintiffs sent responses to survey cards on multiple occasions, and attempted to speak to Winnebago by telephone on multiple occasions, but there were delays in someone answering on Winnebago's end and Plaintiffs were unable to remain on the telephone long enough to get through to a live representative. D. Hill Depo., P115, L21-P116, L4, P116, L9-18. Moreover, Plaintiffs' attorney sent written notice to Winnebago on Plaintiffs' behalf about the Rv's many defects and failed repair attempts on January 31, 2017 which was received by Winnebago. S. Mary Depo., P94, L21-P95, L3.  And, Winnebago has failed to present any evidence that it made any attempt whatsoever to contact Plaintiffs or their attorneys in response before any lawsuit was filed. S. Mary Depo., P95, L4-17; Plaintiffs' Cure Letter (attached to S. Mary's deposition as Exhibit 60). Finally, according to Winnebago, Plaintiffs called Winnebago directly and complained about the repeated repair attempts. S. Mary Depo., P61, L1-11.

36.     There remains no evidence that Plaintiffs provided CW with a separate list of unresolved issues as instructed in the October 19, 2016 and/or December 16, 2016 emails or submitted a formal grievance in writing to Winnebago Owner Relations as instructed under the Limited Warranty. (Exh. 1, Exh. 3, and Exh. 4) (D. Hill Dep. 115:13-25, 116:1-8).

**RESPONSE:** Disputed.  Plaintiffs provided CW with a list of repairs when they dropped

the RV off at CW on October 31, 2016. Aff. D. Hill. (Exhibit 1); CW Repair Order 12449 (Exhibit 12). Additionally, Plaintiffs submitted not one, but two, written notices to Defendant of the failure and inadequacy of repairs along with a list of defects in accordance with the Winnebago Warranty. October 2016 Written Notice to Winnebago (Exhibit 13); December 2016 Written Notice to Winnebago (Exhibit 15). Moreover, Plaintiffs' attorney sent written notice to Winnebago on Plaintiffs' behalf about the Rv's many defects and failed repair attempts on January 31, 2017 which was received by Winnebago. S. Mary Depo., P94, L21-P95, L3.

37.     Though required by the Limited Warranty, at no time prior to filing the instant action did Plaintiffs provide Winnebago with an opportunity to repair the RV. (Exh. 1) (D. Hill Dep. 125:8-11).

**RESPONSE:** Disputed. First of all, the cited deposition testimony does not support Defendant's allegation. Secondly, Winnebago never attempted to do anything to correct the problems noted in the survey cards or the emails, never instructed Plaintiffs to contact another department, never responded to the pre-suit letter sent by Plaintiffs' attorney on Plaintiffs' behalf, and never requested an opportunity to repair the RV at their factory. Aff. D. Hill (Exhibit 1); S. Mary Depo., P94, L21-P95, L17; Plaintiffs' Cure Letter (attached to S. Mary's deposition as Exhibit 60). Every failure to do so was an opportunity to repair the RV that Winnebago didn't take. Finally, Winnebago never asked the Plaintiffs to take the RV back to the factory for repairs. S. Mary Depo., P59, L19-14.

38.     CW received a cease work letter from Plaintiffs' representatives on or around February 6, 2017, but never informed Plaintiffs the RV needed to be picked up. (T. Hill Dep. 38:8-20, 39:8-12) (Patrick Dep. 94:9-24).

**RESPONSE:** Dispute that CW received a "cease work" letter. See T. Hill Depo., P53, L3-7. Instead, CW claims that it received a call from Plaintiffs' attorney on or about February 13, 2017, advising CW of the lawsuit. S. Patrick Depo., P94, L9-24. Undisputed that CW never informed Plaintiffs that the RV needed to be picked up until December of 2017. D. Hill Depo., P94, L17-P96, L11.

39.     After CW received a cease and desist letter from Plaintiffs' representative ordering all work on the RV to cease, CW ceased work on the RV based upon the potential for litigation with Winnebago. (T. Hill Dep. 38:8-20, 55:7-23) (Patrick Dep. 94:9-24).

**RESPONSE:** Dispute that CW received a "cease work" letter. See T. Hill Depo., P53, L3-7. Instead, CW claims that it received a call from Plaintiffs' attorney on or about February 13, 2017, advising CW of the lawsuit. S. Patrick Depo., P94, L9-24. Undisputed that CW claims that it ceased work on the RV based upon Plaintiffs' dispute with Winnebago. See S. Patrick Depo, P94, L18-24.

40.     Despite knowledge of a pending legal action, Plaintiffs failed to retrieve their RV from CW until approximately December 2017. (D. Hill Dep. 95:4-12).

**RESPONSE:** Disputed.  Plaintiffs were not advised by CW that the RV needed to be picked up until December of 2017. D. Hill Depo., P94, L17-P96, L11.

41.     Up to and until the date Plaintiffs retook possession of the RV, CW performed or attempted to perform all warranty repairs on the RV at no charge to Plaintiffs. (D. Hill Dep. 125-15-19).

**RESPONSE:** Undisputed that Plaintiffs were not charged for any repairs performed by CW under the Winnebago Warranty. However, disputed that CW "performed or attempted to

18

perform" all warranty repairs on the RV. Instead, CW failed to perform or attempt to perform the repairs to the flooring defect. CW Repair Order 37214 (Exhibit 12).

42.    In their Complaint, Plaintiffs claim to have experienced defects in the RV including the "electrical inverter system, leveling jacks, floor, shower, ceiling light system, kitchen lighting, overhead bunk system, screen door, entry door, steps system, refrigerator, air mattress pump, toilet, electrical light, radio, and more, amounting to 15 or more defects at least three times in the defendant's authorized repair facility" and "multiple repeat defects that were not repaired within a reasonable amount of time or within a reasonable number of attempts." (Doc. 1, ¶15).

**RESPONSE:** Undisputed that the Complaint speaks for itself.

43.    Plaintiffs agree that CW repaired each listed defect on the first attempt, except the leveling jacks, vinyl floor, and screen door latch. (D. Hill Dep. 90:6-14) (T. Hill Dep. 42:16-25, 43:1-12, 18-25, 44:1-25, 45:1-5).

**RESPONSE:** Disputed. The following defects have also not been fixed on the first repair attempt: shower sealant cracked and refrigerator doesn't get cold. D. Hill Depo., P121, L19-P122, L1. Additionally, the leveling jacks are still not fixed, the floor is still not fixed, and the shower door latch is still not fixed. D. Hill Depo., P121, L12-23. Finally, Plaintiffs have not used the RV since it was picked up in December of 2017, so they do not know if the following defects have been fixed or not: outside radio mounting loose, toilet sprayer, TV LED lights, and air mattress. D. Hill Depo., P122, L16-P123, L6.

44.    Winnebago's Limited warranty does not cover Plaintiffs alleged refrigerator defect, and the refrigerator manufacture provides a separate warranty for the refrigeration unit for

which CW would have sought separate warranty approval to repair or replace. (Mary Dep. 84:13-19).

**RESPONSE:** Undisputed. However, Winnebago has a normal process in place to fix the problem and bill the warranty cost back to the supplier; they order the part because they can get it faster and then bill the warranty cost back to the supplier of the part. S. Mary Depo., P84, L15-P85, L1.

45.     Plaintiffs agree that CW repaired the screen door latch on the second attempt. (D. Hill Dep. 122:7-9).

**RESPONSE:** Disputed. Plaintiffs have not used the RV since picking it up in December of 2017, so they do not know if the screen door latch has been fixed. Aff. D. Hill (Exhibit 1).

46.     After Winnebago denied the second warranty request or "come back" request for the vinyl flooring repair attempt, CW informed Plaintiffs that it would attempt to resolve the second vinyl floor repair issue at no cost to Plaintiffs. (D. Hill Dep. 84:24-15, 90:6-14, 120:18-24, 121:1-52) (Mary Dep. 81: 1-25, 82:1-6).

**RESPONSE:** Disputed. CW told Plaintiffs that they were unsure if the repair could be done at no cost to Plaintiffs and they were going to check. Aff. D. Hill (Exhibit 1); CW Repair Order 12449 (Exhibit 12).

47.     A "come back" in this context means Winnebago paid CW to make the original warranty repair. However, the original repair either failed or was of substandard craftmanship. If the repair comes back to the dealer for a second time, barring some unforeseen reason a second issue would occur, Winnebago has the right to deny the warranty claim, and the second repair becomes CW's responsibility to correct. Winnebago bases its policy on the idea that it has already

20

paid CW to complete a repair in a manner acceptable and compliant with Winnebago's standards and that CW, rather than Winnebago, should shoulder the costs of a second repair. (Mary Dep. 81: 1-25, 82:1-6).

**RESPONSE:** Disputed. Winnebago does not have the right under its warranty to deny a "come back" repair. See Winnebago Warranty (Defendant's Exhibit 1). Moreover, no one ever advised Plaintiffs of that Winnebago "come back" policy, nor were Plaintiffs aware that Winnebago and CW had such an agreement between them. Aff. D. Hill (Exhibit 1).

48.    Lastly, CW attempted warranty-specific repairs to the leveling jacks two times before it received the cease work letter, and the first warranty repair attempt to the leveling jacks appeared successful to CW and Plaintiffs immediately after repairs were made. (D. Hill Dep. 50:20-25) (Mary Dep. 61:8-11).

**RESPONSE:** Disputed– CW had 4 opportunities to perform repairs before CW stopped working on the RV's leveling jack system. Plaintiffs first experienced problems with the RV's leveling jack system during their January 2016 test drive, and then again during their walk through on February 5, 2016. D. Hill Depo., P35, L4-19; P41, L14-16; P46, L10-16; P49, L4-P51, L10; Aff. D. Hill (Exhibit 1). The leveling jack system was first subject to repair after Plaintiffs' test drive on January 15, 2016-January 31, 2016. CW Repair Order 9250 (Exhibit 9). Plaintiffs took delivery of the RV on February 6, 2016, after being assured by CW that the leveling jack system was fixed a second time on February 5, 2016. Id; Aff. D. Hill (Exhibit 1). Plaintiffs did not attempt to operate the leveling jack system again until they went on a short camping trip to Jellystone about 1-2 weeks later. Id. At that time, the error message for the leveling jack system illuminated and the leveling jack system would not operate. Id. The leveling

21

jack system was subject to repair a third time from February 26, 2016 until March 21, 2016. CW

Repair Order 9581 (Exhibit 10). The leveling jack system again malfunctioned and was back in

the shop for a fourth time for repairs from October 31, 2016 until CW apparently stopped

working on the RV on February 13, 2017. CW Repair Order 12449 (Exhibit 12). There is not

evidence that CW received a cease work letter. See T. Hill Depo., P53, L3-7. Instead, CW claims

that it received a call from Plaintiffs' attorney on or about February 13, 2017, advising CW of the

lawsuit. S. Patrick Depo., P94, L9-24.

49.     Plaintiffs admit that aside from the leveling jacks and flooring issues, all other

issues have resolved or they have no knowledge of remaining issues that were reported during the

First, Second, or Third Warranty Repair Periods. (T. Hill Dep. 42:16-25, 43:1-12, 18-25,

44:1-25, 45:1-5).

**RESPONSE:** Disputed. According to Plaintiffs, the following defects are still not

repaired: leveling jack system, floor defects, lighting defects, shower sealant cracked, refrigerator

doesn't get cold, and shower door latch. Aff. D. Hill (Exhibit 1); D. Hill Depo., P121, L12-P122,

L1. Moreover, Plaintiffs' Expert Witness Dennis Bailey verified the following defects during his

inspection of the RV on February 6-7, 2018: (1) compartment doors on both sides are not

aligned, (2) leveling jack system showing error code, (3) passenger side slide out paint stripe not

aligned, (4) drivers side front and rear slide out paint stripes do not align, (5) LP valve leaking at

tank, (6) divots in linoleum floor of kitchen, (7) shower base has scratches and is not sealed

properly, (8) LED light above entertainment center not working, (9) front electric bed not

working, (10) gap in corner of bedroom ceiling, (11) wallpaper peeling in bedroom near bedroom

slide, (12) bedroom wall paneling buckled, (13) cabinet doors in bedroom do not close properly,

22

(14) gaps in floor of bedroom closet, (15) bedroom mirror chipped, (16) gap in bedroom closet wall, (17) gap at counter above kitchen sink, (18) cabinet doors above kitchen sink do not line up, (19) indentations in ceiling above electric bed, (20) wallpaper peeling at passengers side front wall and drivers side front wall of electric bed, (21) air mattress is not holding air, (22) light in living room near entrance is not working, (23) ceiling above couch slide out in living area is detaching, (24) driver side rear compartment door does not open, (25) outside seal of entrance door is not on straight, (26) shower door latch broken, (27) passenger side rear back up light does not work, (28) gap at bottom left of entrance door, (29) air leak on top of passenger side windshield, (30) wire harness hanging up in front of LP tank at drivers side, (31) paneling above drivers side window peeling, and (32) passenger side paneling above window is peeling. Aff. D. Bailey (Exhibit 16).

50. Any other unresolved defects claimed by Plaintiffs after February 6, 2017, fall outside of the one-year limited warranty.

**RESPONSE:** Undisputed that Plaintiffs discovered new issues after the end of the one year Winnebago Limited Warranty. Disputed that the defects fall outside of the Winnebago Warranty, because the additional defects would have been discovered prior to February 6, 2017 if the RV had been repaired within a reasonable time and the RV had been returned to Plaintiffs prior to that date. Aff. D. Hill (Exhibit 1).

51. Plaintiffs claim to have discovered issues including an LP leak and exterior paint striping issues in the week before January 23, 2018—which falls outside of the one-year Limited Warranty period. (Daniel Hill Dep. 123:12-25, 124:1-25, 125:1-2).

**RESPONSE:** Undisputed that Plaintiffs discovered new issues after the end of the one

year Winnebago Limited Warranty. Disputed that the defects fall outside of the Winnebago

Warranty, because the additional defects would have been discovered prior to February 6, 2017 if

the RV had been repaired within a reasonable time and the RV had been returned to Plaintiffs

prior to that date. Aff. D. Hill (Exhibit 1).

52.     CW is an authorized Winnebago service facility. (Patrick Dep. 14:21-23).

**RESPONSE:** Undisputed. See Factual Statement 2 and Plaintiffs' Response thereto.

53.     In the purchase and sale agreement documents, CW expressly states that it is "not

an agent of the manufacturer(s) for warranty purposes even if [CW] completes, or attempts to

complete, repairs for the manufacturer(s)…" (Exh. 2, Additional Terms and Conditions, ¶10).

**RESPONSE:** Undisputed that the back side of the purchase agreement speaks for itself,

and that Defendant has taken a portion of a sentence out of the language therein and placed it in

quotes. However, Plaintiffs dispute: (1) the characterization of the document as purchase and sale

agreement documents, (2) that Plaintiffs acknowledged any terms contained on the back side of

the purchase agreement, and (3) that CW was not an agent for Winnebago in dealing with

Plaintiffs.

Instead, the purchase agreement is a single document with a front and back side, the

"Additional Terms and Conditions" being on the back side. Aff. D. Hill (Exhibit 1). Plaintiffs

were never provided the opportunity to read the back side of the purchase agreement, the

"Additional Terms and Conditions" on the back side were never explained to Plaintiffs nor were

they referenced by Defendant's authorized dealer CW, and Plaintiffs were not even aware that

the purchase agreement had a back side. Aff. D. Hill (Exhibit 1).

Additionally, Plaintiffs were actually advised by CW at the time of sale and prior to that

24

time that CW was an authorized Winnebago dealer, and that they were to take the RV to CW or any other authorized dealers if they had problems that needed to be repaired under the Winnebago Warranty. Aff. D. Hill (Exhibit 1).

54. In the Limited Warranty, Winnebago expressly disclaims that it "does not own or control, and shall not be responsible for, or bound by, representations, misrepresentations, or assurances, made by [CW] personnel or be liable for a dealer's illegal, fraudulent, or unethical business conduct." (Exh. 1, Exh. 2).

**RESPONSE:** Undisputed that the Winnebago Warranty speaks for itself, and that Defendant has taken a portion of a sentence out of the second page of the Warranty and placed it in quotes. Disputed that the language both inside and outside of the quotes is contained fully within the Winnebago Warranty. The "No responsibility for dealer statements or conduct" section of the Winnebago Warranty, on page 2, reads as follows:

> Although authorized to sell and to service Winnebago and Itasca brand motorhomes under warranty, the dealer is an independent business. Winnebago does not own or control, and shall not be responsible for, or bound by, representations, misrepresentations, or assurances, made by dealer personnel or be liable for a dealer's illegal, fraudulent, or unethical business conduct.

Winnebago Warranty (Defendant's Exhibit 1).

**B.    CONCISE STATEMENT OF ADDITIONAL MATERIAL FACTS**

For their Concise Statement of Additional Material Facts, Plaintiffs state as follows:

55. Plaintiffs purchased the RV for their own personal, family and household use to enjoy time camping and visiting family together with their dogs. Aff. D. Hill (Exhibit 1).

**RESPONSE:**

25

56.     Plaintiffs' RV was subject to repair twice under the Winnebago Warranty before they took delivery of it in January of 2016 and on February 5, 2016, because the leveling jack system was not working properly and the warning light was illuminating. Aff. D. Hill (Exhibit 1); CW Repair Order 9250 (Exhibit 9).

**RESPONSE:**


57.     Plaintiffs' RV was in the shop a total of three times for repairs under the Winnebago Warranty after they purchased it, and it was out of service for reason of repairs a total of 140 days up to and including February 13, 2017. Aff. D. Hill (Exhibit 1); CW Repair Order 9581 (Exhibit 10); CW Repair Order 11288 (Exhibit 11); CW Repair Order 12449 (Exhibit 12).

**RESPONSE:**


58.     All of the problems that Plaintiffs have had with the RV have substantially impaired the RV's value and use to them. Aff. D. Hill (Exhibit 1). The many problems with the RV have also caused Plaintiffs to lose faith in the reliability of the RV. Id. And, because of the current defects, Plaintiffs have been unable to use the RV since the last repair attempt. Id.

**RESPONSE:**


59.     If Plaintiffs had known about the RV's many problems, they never would have purchased it. Aff. D. Hill (Exhibit 1).

**RESPONSE:**

60.     As the owner of the RV, it is Plaintiffs' opinion that the RV would have been worth what they paid for it if it had been as represented, but that in reality, considering the defects, they feel that it was only worth $23,000, at most, at the time of purchase because of its many defects and the failed repair attempts. Aff. D. Hill (Exhibit 1).

**RESPONSE:**


61.     Plaintiffs do not believe that this RV was fit for its ordinary use when they purchased it because of all of the problems, including the leveling jack system and flooring defects, which were present at the time of purchase and are still not repaired. Aff. D. Hill (Exhibit 1).

**RESPONSE:**


63.     Plaintiffs' Expert Witness, Dennis Bailey, has worked in the Recreational Vehicle industry for RV dealers and an RV manufacturer, both selling and servicing RVs, for a total of 35 years. Aff. D. Bailey (Exhibit 16); Curriculum Vitae (Exhibit 16A).

**RESPONSE:**


64.     Plaintiffs' Expert Witness, Dennis Bailey, inspected the RV on February 6 and 7, 2018.

**RESPONSE:**


65.     It is Mr. Bailey's opinion, within a reasonable degree of certainty, that

the following defects were not repaired within a reasonable number of repair attempts: the leveling system jack and the flooring divots. Aff. D. Bailey (Exhibit 16).

**RESPONSE:**


66.     It is Mr. Bailey's opinion, within a reasonable degree of certainty, that Plaintiffs provided Winnebago with a reasonable opportunity to repair each and every one of the defects which they presented to Camping World for repair, but that the many defects in this RV caused the RV to be out of service for repairs for an unreasonable and excessive amount of time. Aff. D. Bailey (Exhibit 16); Expert Report (Exhibit 16B).

**RESPONSE:**


67.      It is Mr. Bailey's opinion, within a reasonable degree of certainty, that this RV's defects were not repaired within a reasonable amount of time. Aff. D. Bailey (Exhibit 16); Expert Report (Exhibit 16B).

**RESPONSE:**


68.     It is Mr. Bailey's opinion, within a reasonable degree of certainty, that the defects in this RV, both past and present, substantially impair the RV's use and/or value. Aff. D. Bailey (Exhibit 16); Expert Report (Exhibit 16B).

**RESPONSE:**


69.     It is Mr. Bailey's opinion, within a reasonable degree of certainty, that

this RV was not merchantable and fit for its ordinary use at the time that he inspected it and, because of its many defects, and was not merchantable and fit for its ordinary use at the time that it was sold to Plaintiffs. Aff. D. Bailey (Exhibit 16); Expert Report (Exhibit 16B).

**RESPONSE:**

70.     It is Mr. Bailey's opinion, within a reasonable degree of certainty, that the RV was worth $78,081.90 less than Plaintiffs paid for it on the date of purchase, because of its many defects, repair history, and failed repair attempts. Aff. D. Bailey (Exhibit 16); Expert Report (Exhibit 16B).

**RESPONSE:**

71.     The intended purpose of this RV is recreational use. S. Mary Depo., P9, L10-13.

**RESPONSE:**

72.     Winnebago's own representative, Steve Mary, observed the leveling jack system defect first hand during Winnebago's inspection of the RV on January 23, 2018. S. Mary Depo., P18, L16-19.

**RESPONSE:**

73.     A leveling jack error code, like the one here, always says return the RV to

29

an authorized dealer for service and it says that because the RV needs to go in for service. S. Mary Depo., P21, L2-12.

**RESPONSE:**


74.    Winnebago representative Steve Mary admits that the number of repair attempts to the leveling jack system in this was abnormal. S. Mary Depo., P109, L24-P110, L2.

**RESPONSE:**


75.    Winnebago representative Steve Mary admits that the leveling jack system defect should have been repaired in 1 repair attempt. S. Mary Depo., P27, L3-5.

**RESPONSE:**


76.    Winnebago's own representative, Steve Mary, observed the flooring defect first hand during Winnebago's inspection of the RV on January 23, 2018. S. Mary Depo., P30, L6-8.

**RESPONSE:**


77.    Winnebago representative Steve Mary admits that the flooring defect should have been repaired in 1 repair attempt. S. Mary Depo., P31, L1-3.

**RESPONSE:**


78.    When the RV arrived at CW from Winnebago, there were at least 14

30

different defects present that needed to be repaired by CW. S. Mary Depo., P39, L19-22; Winnebago Packing Card (attached to S. Mary's deposition as Exhibit 63).

**RESPONSE:**

79. The purpose of Winnebago's internal "Correspondence" documents is for all communication records having to do with the RV, the dealer, and the owner, to all be in one place. Thus, regardless of what department a communication from a dealer or owner is sent to, Winnebago stores those communications in one place. S. Mary Depo., P46, L9-18; Winnebago Correspondence Documents (attached to S. Mary's deposition as Exhibit 65).

**RESPONSE:**

80. Winnebago never asked the Plaintiffs to take the RV back to the factory for repairs. S. Mary Depo., P59, L19-14.

**RESPONSE:**

81. The only thing that Winnebago ever did when they responded to Plaintiffs was to tell them to take the RV to their local Winnebago authorized dealer. S. Mary Depo., P59, L15-20.

**RESPONSE:**

82. Plaintiffs called Winnebago directly and complained about the repeated repair attempts. S. Mary Depo., P61, L1-11.

31

**RESPONSE:**

83.　The ATS recall was a defect that existed in this RV when it was manufactured by Winnebago. S. Mary Depo., P69, L15-21.

**RESPONSE:**

84.　The ATS recall was a defect that could cause fire or personal injury. S. Mary Depo., P66, L18-24.

**RESPONSE:**

85.　This RV was manufactured with a water pump switch missing which Winnebago should have installed during the manufacture and could have but didn't. S. Mary Depo., P77, L3-16.

**RESPONSE:**

86.　Winnebago warrants all of the RV parts that do not have a warranty from the part supplier that goes to the consumer directly. S. Mary Depo., P88, L10-22.

**RESPONSE:**

87.　Winnebago authorized dealers get paid for warranty repairs under the Winnebago Warranty, and Winnebago has a policy and procedure manual with its authorized dealers on how to process warranty claims, and what procedures Winnebago authorized dealers

32

are supposed to follow when performing repairs under the Winnebago Warranty. S. Mary Depo.,

P95, L23-P97, L2; P106, L12-P108, L22.

**RESPONSE:**

Respectfully submitted,

/s/ Ronald L. Burdge
RONALD L. BURDGE
Attorney for Plaintiffs Pro Hac
8250 Washington Village Drive
Dayton, Ohio 45458-1850
Telephone:     937.432.9500
Email:          Ron@BurdgeLaw.com

Brent S. Snyder
Attorney for Plaintiffs
2125 Middlebrook Pike
Knoxville, TN 37921
Telephone:    865.546.2141
Email: brentsnyder77@gmail.com

**CERTIFICATION**

This will certify that a true and accurate copy of Plaintiff's *Response to Defendant's Statement of Material Facts <u>and</u> Concise Statement of Additional Material Facts* was served upon **Benjamin T. Reese & Kaley Pennington Bell**, Leitner, Williams, Dooley & Napolitan, PLLC, 200 W Martin Luther King Boulevard, Chattanooga, TN 37402, counsel for Defendant Winnebago, on September 14, 2018, electronically by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Ronald L. Burdge
RONALD L. BURDGE
Attorney for Plaintiffs Pro Hac

Z:\data\Hill, Tammie\Etc\Etc Response to Def Statement of Facts and Additional Statement of Facts Final 2 091418 bw.wpd