# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| TAMMIE HILL, ET AL., | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| | ) | NO. 3:17-cv-00678 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| WINNEBAGO INDUSTRIES, INC., | ) | MAGISTRATE JUDGE |
| | ) | HOLMES |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 25). Plaintiffs filed a Response in Opposition (Doc. No. 35), Defendant filed a Reply (Doc. No. 38), and Plaintiffs filed a Surreply. (Doc. No. 43). For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

### I. FACTUAL BACKGROUND

Plaintiffs filed this action against Defendant alleging "breach of express and/or implied warranties and/or contract" and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (Doc. No. 1). On February 5, 2016, Plaintiffs purchased a 2016 Winnebago Sunstar LC 30T recreational vehicle (the "RV") manufactured by Defendant from Camping World, a dealership and authorized Winnebago repair facility. (Doc. No. 36). As part of the purchase, the RV came with a one year new vehicle limited warranty from Winnebago. (*Id.*). Under the "Basic Coverage" provision of the limited warranty, Defendant promised to repair or replace, "at no cost to the owner for parts, materials, or labor so long as the motorhome has been used exclusively for recreational purposes and maintained as recommended in the Operator's Manual." (Doc. No. 26-1).

1

To obtain repairs under the limited warranty, the owner was instructed to present his or her RV to "an authorized Winnebago service facility during normal business hours and provide a written list of items to be inspected or repaired to the service facility and Winnebago." (Doc. No. 26-1). In the event the owner "feel[s] the repairs made by and authorized service center fail or are otherwise inadequate, [the owner] must contact Winnebago Owner Relations **in writing** and advise them of the failure or inadequacy, including a list of the defects, and provide Winnebago an opportunity to repair the motorhome prior to claiming a breach of this warranty." (*Id.*) (emphasis in original).

The limited warranty also contains a provision limiting the remedies an owner may seek, providing: "Your sole and exclusive remedy in a proceeding for breach of this [limited warranty] is money damages in an amount equal to the reasonable cost for material and labor necessary to repair or replace parts that should have been done under the [limited warranty] but were not." (Doc. No. 26-1). Similarly, the limited warranty restricts the remedies and owner may seek for breach of any implied warranty to "money damages in an amount equal to the reasonable cost for material and labor necessary to correct the defect or defects upon which the finding of breach of implied warranty is based." (*Id.*).

Plaintiffs allege they first experienced problems with the RV – specifically its leveling jack system – prior to purchasing it during a test drive in January 2016, and then again during a walk through on February 5, 2016. (Doc. No. 35). Plaintiffs state they took delivery of the RV on February 6, 2016, after being assured by Camping World that the leveling jack system was fixed. (*Id.*). However, Plaintiffs contend that after purchasing the RV, they discovered it had a number of other malfunctions, defects, and problems, and that Defendant failed to remedy these issues timely and properly. (Doc. No. 1). Specifically, Plaintiffs took the RV to Camping World on

February 26, 2016 for repairs to the leveling jacks, screen door latch, entry door lock, toilet sprayer, side drawer, map light, and LCI steps. (Doc. No. 36). The RV remained at Camping World for approximately three weeks until the repairs were completed. (*Id.*). During subsequent RV trips to California and Kentucky, Plaintiffs discovered additional problems that needed repairing: the vinyl flooring, the radio mount, and the shower pan. (*Id.*). Plaintiffs presented the RV to Camping World for repairs in late July 2016, took the RV home, and returned in mid-September 2016 to have the repairs completed. (*Id.*).

After the September repairs were done, Plaintiffs took their RV on another trip. (Doc. No. 36). Upon their return, Plaintiffs went to Camping World for further repairs to the leveling jack, inverter, screen door latch, LED lights, refrigerator unit, air mattress, upper bunk, and issues with the vinyl flooring repair. (*Id.*). The RV remained in Camping World's possession from late October 2016 until January 2017 for warranty-related repairs. (*Id.*).

During this time, Plaintiffs contacted Defendant by email through an online link or portal on Defendant's website on October 17, 2016, and December 16, 2016. (Doc. No. 26-3). On October 17, 2016, Plaintiffs expressed dissatisfaction with their RV, including a list of some of the defects they had encountered. (*Id.*). Plaintiffs explained they had completed multiple survey cards expressing their dissatisfaction with the RV and its repairs, but had not been contacted by anyone who worked for Defendant. (*Id.*). Two days later, one of Defendant's employees – identified as Service Advisor Angela Gerdes – responded to Plaintiffs' email, apologizing for the difficulties Plaintiffs had encountered with their RV. (*Id.*). Ms. Gerdes notified Plaintiffs their warranty history listed only one claim for four issues, and stated she was "not sure if Camping World has handled the items internally, or just not submitted the proper paperwork." (*Id.*). Ms. Gerdes recommended Plaintiffs make a list of any unresolved issues and set up an appointment with their dealer. (*Id.*).

3

On December 16, 2016, Plaintiffs again expressed dissatisfaction with their RV, including the length of time Camping World took on the repairs and Defendant's failure to communicate timely with Camping World about the repairs. (Doc. No. 26-4). Plaintiffs provided Defendant a list of repairs that needed to be done. (*Id.*). Ms. Gerdes responded to the email three days later stating, "I have reviewed your file to try and get a grasp on what may have caused the delays. Camping World has only contacted us regarding the flooring." (*Id.*). Ms. Gerdes further stated that the delays appeared to be the fault of Camping World, and that she would let Plaintiffs know if she heard anything from Camping World. (*Id.*).

Finally, Plaintiffs allege their attorney sent written notice to Defendant on January 31, 2017, regarding the RV's many defects and failed repair attempts. (Doc. No. 36). Plaintiffs contend Defendant failed to respond to this letter before Plaintiffs initiated this action in April 2017. (*Id.*).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's*

*Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

#### A. Magnuson-Moss Warranty Act

The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1), creates a private right of action for any "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the statute], or under a written warranty, implied warranty, or service contract." The Act, however, "does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law." *Bearden v. Honeywell Intern. Inc.*, 720 F. Supp. 2d 932, 938 (M.D. Tenn. 2010) (quoting *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1200 n.14 (N.D. Ga. 2005)). Thus, to recover under the Magnuson-Moss Act, Plaintiffs must assert a viable state-law warranty claim. *Id.; Temple v. Fleetwood Enterprises, Inc.,* 133 Fed. Appx. 254, 268 (6th Cir. 2005) ("Ultimately, the applicability of the Magnuson-Moss Act is directly dependent upon a sustainable claim for breach of warranty.").

The parties agree Tennessee state law governs Plaintiffs' express and implied warranty claims. Plaintiffs contend Defendant breached an express limited warranty by failing to adequately

5

repair the RV's defects. Plaintiffs also contend that Defendant breached the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.

## B. Breach of the Limited Warranty Claim

Plaintiffs' breach of warranty claim includes three elements: (1) that the goods are subject to a warranty and are nonconforming; (2) that the seller was given a reasonable opportunity to cure the defects; and (3) that the seller failed to repair the defects within a reasonable time or within a reasonable number of attempts. *Temple v. Fleetwood Enterprises, Inc.*, 133 Fed. Appx. 254 (6th Cir. 2005); *Hatley v. Crossville Bnrv Sales, LLC*, 2015 WL 12547618, at *4 (E.D. Tenn. Nov. 20, 2015).

In its motion for summary judgment, Defendant asserts it is not liable for any breach of the limited warranty because Plaintiffs failed to properly notify Defendant about the RV's defects and failed to give Defendant a reasonable opportunity to cure the defects.[1] Specifically, Defendant argues the limited warranty instructs Plaintiffs to contact its "Owner Relations" department in writing with a list of defects if Plaintiffs "feel the repairs made by an authorized service center fail or are otherwise inadequate," and must "provide Winnebago an opportunity to repair the motorhome prior to claiming a breach of this warranty." Defendant acknowledges Plaintiffs sent at least two emails to Defendant documenting their complaints of multiple defects to their RV, but argues that these emails were not sent properly to the "Owner Relations" department. Instead the emails were received by another department, the Winnebago Industries Services Administration. Defendant argues that because the proper Winnebago department was never notified of Plaintiffs' warranty related complaints, Defendant was not provided an opportunity to repair the RV.

---

[1] In addition to arguing about whether there was a breach of the limited warranty, the parties make a separate argument in their briefing about whether a breach of contract claim exists against Defendant for violating the limited warranty. The Court considers the breach of contract claim duplicative to the breach of limited warranty claim, and thus, only addresses the breach of limited warranty claim.

6

In response, Plaintiffs argue they substantially complied with the limited warranty's notification procedures by emailing Defendant on two separate occasions regarding the RV's defects and Camping World's failure to repair the defects timely.[2] Plaintiffs contend that regardless of which department a communication from a dealer or owner is sent to, Defendant admits all communications regarding an RV – including its owner and dealer – are stored in one place. Plaintiffs further argue that despite their email notifications and the pre-suit letter their attorney sent, Defendant never instructed Plaintiffs to contact another department with their complaints or requested an opportunity to repair the RV at their corporate facilities in Forest City, Iowa.

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds there is a genuine issue of material fact as to whether Plaintiffs complied with the limited warranty's notification procedures so as to notify Defendant about the RV's defects and give it a reasonable opportunity to cure the defects. Although Plaintiffs did not contact Defendant's "Owner Relations" department, they emailed Defendant a list of their complaints and corresponded with one of its "Service Advisor" employees on at least two occasions. This employee made clear Defendant had access to Plaintiffs' "file," was aware of Plaintiffs' repair attempts with Camping World, and would let Plaintiffs know if she heard anything from Camping World. At no point did Defendant's employee suggest Plaintiffs contact another department with their complaints or deliver their RV to another authorized service center or Defendant's corporate facilities for repairs.

---

[2] Where a party has substantially performed or complied with the contract, ordinarily that party will not have liability for breach. 22 Tenn. Prac. Contract Law and Practice § 11:11. Substantial performance occurs where there has been no willful departure from the terms and no violation of an essential point. *Id.*; *Thayer v. Wright Co.*, 362 S.W.2d 805 (Tenn. Ct. App. 1961) (law does not require perfection but only substantial compliance, without material variance from specifications).

Accordingly, Defendant's motion for summary judgment on Plaintiffs' breach of limited warranty claim is **DENIED**. And because there are genuine issues of material fact that preclude summary judgment on Plaintiffs' breach of limited warranty claim, Plaintiffs' Magnuson-Moss Act claim on this ground also survives summary judgment.

### C. Breach of Implied Warranty of Merchantability

In Tennessee, "a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Tenn. Code Ann. §47-2-314. Goods are only "merchantable" when they are "fit for the ordinary purposes for which such goods are used." *Gentry v. Hershey Co.*, 687 F. Supp. 2d 711, 722 (M.D. Tenn. 2010). To recover under this warranty, "the purchaser must show that the goods did not measure up to the requirements of the warranty at the time they were delivered." *Autozone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 949 (W.D. Tenn. 2010).

Defendant argues that Plaintiff's implied warranty of merchantability claim fails because no defect existed in the RV at the time it was delivered. In response, Plaintiffs argue there were defects in the leveling jack system during their January 2016 test drive, and then again during their walk through on February 5, 2016. Plaintiffs contend they took possession of the RV on February 6, 2016, after being assured that the leveling jack system was fixed. However, when Plaintiffs attempted to operate the leveling jack system 1-2 weeks later, it would not work and an error light illuminated. Plaintiffs allege that when the error light illuminates, the RV should not be driven, and instead should be returned to an authorized dealer for service.

The Court finds genuine issues of material fact exist as to whether Defendant breached its implied warranty of merchantability when it delivered the RV with the alleged leveling jack defects Plaintiff complains of. Accordingly, Defendant's motion for summary judgment on this ground is

8

**DENIED**. And because there are genuine issues of material fact that preclude summary judgment on Plaintiffs' breach of implied warranty of merchantability claim, Plaintiffs' Magnuson-Moss Act claim on this ground also survives summary judgment.

D. **Breach of the Implied Warranty of Fitness for a Particular Purpose**

Tennessee law provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." Tenn. Code Ann. § 47-2-315. "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business. . . ." Tenn. Code Ann. § 47-2-315 (Official Comment 2).

Defendant argues that because it did not directly sell the RV to Plaintiffs, it could not have known of a particular purpose Plaintiffs intended to use the RV for, aside from its typical use as a recreational vehicle. Further, Defendant argues Plaintiffs testified they wished to use the RV for the purpose of traveling long distances, camping, and sleeping multiple people, which is not any sort of "particular purpose" for a recreational vehicle. In response, Plaintiffs argue that traveling long distances, camping, and sleeping multiple people were the "specific recreational purposes" they sought in purchasing the RV, and that Winnebago was aware of these purposes.

Even viewing the evidence in the light most favorable to Plaintiffs, the Court finds the evidence does not support Plaintiffs' allegation that they purchased the RV for a "particular purpose." Plaintiffs allege they intended to use their RV to travel long distances, camp, and sleep multiple people. Such use is by no means "particular" or "peculiar" to an RV. Accordingly, Defendant's motion for summary judgment on this ground is **GRANTED**.

### E. Remedies under the Limited Warranty and Implied Warranty of Merchantability

Defendant argues that even if Plaintiffs' limited warranty or implied warranty claims survive summary judgment, their damages must be limited to the remedies set forth in the plain language of the limited warranty. The limited warranty reads: "Your sole and exclusive remedy in a proceeding for breach of this [limited warranty] is money damages in an amount equal to the reasonable cost for material and labor necessary to repair or replace parts that should have been done under [the limited warranty], but were not." (Doc. No. 26-1). The limited warranty also restricts the damages recoverable for breach of an implied warranty to "money damages in an amount equal to the reasonable cost for material and labor necessary to correct the defect or defects upon which the finding of breach of implied warranty is based." (*Id.*).

In response, Plaintiffs argue that the limited warranty's provision restricting the remedies Plaintiffs may seek is unenforceable because: 1) the warranty failed of its essential purpose; 2) there was no meeting of the minds and the "limitation of remedy" clause is unconscionable; and 3) the clause fails to provide Plaintiffs with a "fair quantum of damages."

Tenn. Code Ann. § 47-2-719(1) allows parties to contractually limit the remedies available to a buyer. *Baptist Memorial Hosp. v. Argo Const. Corp.*, 308 S.W.3d 337, 345 (Tenn. Ct. App. 2009). But in the event a limited remedy fails of its essential purpose, the buyer may take advantage of other remedies available under the UCC. *Id.* Generally, a limited warranty fails of its essential purpose when the warrantor is unable or unwilling to repair or replace in a reasonable amount of time. *Trinity Industries, Inc. v. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159, 170 (Tenn. Ct. App. 2001) (abrogated on other grounds).

Plaintiffs argue the limited warranty failed of its essential purpose because the RV's defects were not repaired within a reasonable amount of time. Plaintiffs argue their RV was in the shop

three separate times for repairs for a total of 140 days, and that their expert witness Dennis Bailey contends the RV's defects were not repaired within a reasonable amount of time. In response, Defendant argues it never had an opportunity to repair or replace the RV's defects because Plaintiffs never presented the RV to "another service center" or to Defendant's service center in Forest City, Iowa.[3]

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds genuine issues of material fact exist as to whether the limited warranty fails of its essential purpose so as to prevent Defendant from limiting Plaintiffs' remedies to the cost to repair or replace the RV. For the same reason the Court cannot grant Defendant's motion for summary judgment on breach of the limited warranty, there are genuine issues of material fact regarding whether Defendant had an opportunity to repair the RV but failed to do so. These questions are better suited for a jury to answer. Accordingly, Defendant's motion for summary judgment regarding the limitation of available remedies for breach of the limited warranty or the implied warranty of merchantability is **DENIED**.[4]

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[3] Defendant relies on *Platt v. Winnebago Industries, Inc.*, (U.S. Dist. Colo. Sept. 14, 2018) (Doc. No. 38-1) to argue that Plaintiff's failure to follow the notification procedures in the limited warranty bars their argument that the warranty failed of its essential purpose because Defendant never had an opportunity to repair the RV. *Platt*, however, is distinguishable from the current case. In *Platt*, Winnebago made multiple offers to repair the RV at issue, instructed the plaintiffs to deliver it to the corporate facilities, and scheduled an appointment date. The plaintiffs then cancelled their appointment before Winnebago had an opportunity to attempt to fix the RV.

[4] Because the Court denies Defendant's motion for summary judgment on this ground, the Court need not address Plaintiff's additional arguments that there was no meeting of the minds and the "limitation of remedy" clause is unconscionable, and that the limitation of remedy clause fails to provide Plaintiffs with a "fair quantum of damages."