# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| TAMMIE HILL and DANIEL HILL, | ) | |
| Plaintiffs | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 3:17-CV-00678 |
| WINNEBAGO INDUSTRIES, INC., | ) ) ) | JURY TRIAL DEMANDED |
| Defendant | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT, DENNIS BAILEY

Comes now the Defendant, Winnebago Industries, Inc., by and through counsel, pursuant to Rules 104(a) and 702 of the *Federal Rules of Evidence* and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and submits this *Memorandum of Law in Support of Defendant's Daubert Motion to Exclude Testimony of Plaintiffs' Expert, Dennis Bailey*. As grounds for this Motion, the Defendant would show as follows:

### I.  INTRODUCTION

In this matter, Plaintiffs' allege their purchase of a "defective" RV and subsequent unsuccessful repairs made by Winnebago's authorized dealer, Camping World, violate the Magnuson Moss Warranty Act ("MMWA") and/or breach the Limited Warranty provided by Winnebago. Winnebago denies that it breached the MMWA or the Limited Warranty.

Plaintiffs contend the appropriate measure of damages is difference between the purchase price of the RV and the value of the RV on the date of purchase assuming that all alleged defects were present at the time of purchase. Plaintiffs intend to offer the testimony of Dennis Bailey as

a means to establish the value of the RV on the date of purchase with consideration given to each and every alleged defect on the RV, regardless of when the defect was discovered or whether proper notice was given to Winnebago concerning those defects.

In this Motion, the Court is asked to consider whether Plaintiffs' sole disclosed expert, Dennis Bailey, is qualified to provide expert testimony in this case and to determine whether his expert conclusions are based upon reliable methodology. Stated succinctly, Mr. Bailey's willingness to proffer unsupported opinions and his inability to articulate the basis for the same, among other factors, should warrant disqualifying him as an expert witness. Mr. Bailey's own testimony, not to mention his expert report attached hereto as Exhibit 1, all lead to the inescapable conclusion that his unsupported testimony will only confuse the issues at hand and will be of no assistance to the trier of fact.

Mr. Bailey's opinions should be excluded for the following reasons:

1. Mr. Bailey is not qualified to offer an expert opinion on the appraisal of the RV; and

2. The methodology employed by Mr. Bailey to appraise the value of the RV is unreliable.

## II. STANDARD FOR ADMISSIBILITY OF EXPERT'S OPINION

Plaintiffs, as proponent of the expert evidence of Dennis Bailey, have the burden to establish that their expert's opinions are admissible. *See Federal Rule of Evidence* 104(a). Defendant acknowledges that in determining whether to admit expert testimony, it is "broadly accepted that the district court has considerable leeway." *Baker v. Chevron U.S.A., Inc.,* 533 F. App'x 509, 520 (6th Cir. 2013) (internal citations omitted).

When faced with a proffer of expert testimony, a trial court's role is to make a preliminary determination as to whether the testimony is admissible. *Rolen v. Hansen Beverage Co.*, 193 F. App'x 468, 472 (6th Cir. 2006). "This entails a preliminary assessment of whether the reasoning

or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993). Codifying the Supreme Court's decision in *Daubert*, *Federal Rule of Evidence* 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

*Fed. R. Evid.* 702 (West 2011).

To evaluate whether the methods and principles are reliable, *Daubert* suggests that courts look at the following factors:

> (1) whether the theory, conclusion, or technique has been tested or is testable; (2) whether it has been published or subjected to peer review; (3) whether it has a potential or known error rate; and (4) whether the theory, conclusion, or technique enjoys general acceptance within the relevant scientific community.

*U.S. v. Roberts*, 830 F. Supp. 2d 372, 377 (M.D. Tenn. 2011) (citing *Daubert*, 509 U.S. at 593–94; *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 n.5 (6th Cir. 2001)).

In construing the requirements of Rule 702, the United States Supreme Court has held that in order to qualify as "scientific knowledge," "an inference or assertion must be derived by the scientific method and proposed testimony must be supported by appropriate validation, i.e., 'good grounds' based on what is known." *U.S. v. Pollard*, 128 F.Supp.2d 1104, 1107-1108 (E.D. Tenn. 2001) (*citing Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993). In other words, "the word 'knowledge' connotes more than subjective belief or unsupported speculation."

*Pollard,* 128 F. Supp.2d. at 1107 (*citing Turpin v. Merrell Dow Pharmaceuticals, Inc.,* 959 F.2d 1349, 1352 (6th Cir.1992)). Therefore, testimony of an expert must be accompanied by a sufficient factual foundation before it can be submitted to the jury. *Elcock v Kmart Corp.*, 233 F.3d 734, 754 (3d Cir. 2000) (*citing Gumbs v. International Harvester*, *Inc.*, 718 F.2d 88, 98 (3d Cir. 1983)).

In short, "[a]n expert who presents testimony must employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Best v. Lowe's Home Centers, Inc.*, 563 F.3d 171, 176 (6th Cir. 2009) (*citing Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, (1999). Further, unfair prejudice exists where there is danger that the evidence will be given undue weight by the trier of fact. *Taylor v. Mobley*, 760 N.W.2d 234, 238-239 (Mich. App. 2008).

The Sixth Circuit has observed that "[t]he party seeking to have the testimony admitted bears that burden of showing 'that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology.'" *Pollard*, 128 F. Supp.2d at 1108 (*quoting Smelser v. Norfolk Southern Railway Co.*, 105 F.3d 299, 303 (6th Cir.) cert. denied, 522 U.S. 817 (1997)). Accordingly, an expert's testimony regarding a personal, rather than scientific opinion, is inadmissible. *Turpin*, 959 F.2d at, 1360 (citing Fed. R. Evid. 703; *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 423-24 (5th Cir.1987).

### III.     GROUNDS FOR DISQUALIFICATION

As explained in detail below, Mr. Bailey's is pretending to be an expert as it relates to the appraisal value of the RV at a certain point in time. He is merely giving his personal opinion. Pursuant to *Daubert*, to be a true expert whose opinions are worthy of admissibility and credibility in a valuation controversy, the expert's work must be: Qualified – expert must be qualified to state the opinion offered. Relevant – testimony must be sufficiently tied to the facts of the case.

Reliable – testimony must be grounded in the accepted technical method. Mr. Bailey's opinions do not meet the standards outlined above. Accordingly, his testimony should be excluded.

### A. Dennis Bailey Lacks Formal Education, Scientific Training, and Study to Provide Competent Expert Testimony in this Matter.

The Court must find the proffered expert evidence to be relevant to the case at hand for it to be admissible. In order for the evidence to be relevant, which by definition in *Fed. R. Evid*. 702 will "assist the trier of fact" to understand evidence or determine a fact in issue, the Court should scrutinize whether the purported expert's qualifications "provide a foundation for a witness to answer a specific question" at issue in the case. *Smelser v. Norfolk S. Ry.*, 105 F.3d at 303 (6th Cir. 1997). Such qualifications must be related to the subject matter of the purported expert's proposed testimony. *Id*.

In this matter, Mr. Bailey's assignment was "to investigate defects" present on the RV and to "try to find the cause of the problem." (See Exhibit 2 – Deposition of Dennis Bailey at p. 23, l. 16-17 and p. 25, l. 4-5). On February 6, 2018, approximately one year after the Limited Warranty for the RV expired, Mr. Bailey inspected the RV for such defects and, thereafter, rendered a 36-page report of his findings titled "Independent RV Investigation Report of Alleged Manufacturer Defects & Appraisal of Value as Determined on the Day of Purchase Considering Past and Present Issues." (See Exhibit 1). In addition to noting additional defects that were previously unknown to Winnebago, Mr. Bailey provided his opinion "on the past work orders and valuation issues." (Id. at p. 3).

Mr. Bailey's qualifications are listed in his Curriculum Vitae in Exhibit 1 to his report. (Id. at p. 35). His CV demonstrates that his formal education is very limited. Indeed, Mr. Bailey graduated high school and attended one year of college at Ferris State College, where he studied "the basics." (Exhibit 2 at p. 25, l. 15 – p. 26, l. 4). After leaving college, he went on to professional

umpire school for baseball. (Id) Thereafter, in 1983, he began working in the RV industry for his family owned business. (Id. at p. 26, l. 14-19) Since that time, he has been employed in the industry with various RV establishments either as a service technician or in sales. (Id. at p. 27, l.2 – p. 28, l. 14).

In 2005, Mr. Bailey began working for RV/Marine Forensic Investigations & Appraisals of America, LLC, a company owned by his brother, Tom Bailey. (Id. at p. 28, l. 15-19). In that business, Mr. Bailey works as a "consultant" and "RV investigator." (Id. at p. 31, l. 9-19). Mr. Bailey testified that he has performed only 10-15 investigations on RVs since 2005. (Id. at p. 31, l. 25 – p. 32, l. 8). To perform an investigation, Mr. Bailey inspects the RV for defects, takes pictures, and consults with his brother concerning his findings. (Id. at p.31, l. 17-19). At no time has Mr. Bailey provided additional licenses, certification, or qualifications that support his assertion that he is an "expert" in RV appraisal or evaluation aside from his 13 years' experience working under and reporting to his brother.

Furthermore, until this case, Mr. Bailey has never been a specially retained expert for the purposes of providing an opinion on the appraisal value of an RV. (Id. at p. 29, l. 6-10). Indeed, when he was deposed in this matter, it was the first time he had ever given a deposition in the capacity of an expert witness. (Id. at p. 19, l. 5-10). In other words, this will be the first Court to actually pass upon the qualifications of Mr. Bailey as a retained expert as contemplated by the *Federal Rules of Evidence*.

As is evident from his CV, Mr. Bailey has never pursued a degree in any field of study relevant to his opinions concerning appraisal values of an RV. (Exhibit 1 at p. 35-36). While the list of his courses completed and certifications is long, absent from that list is anything to do with

appraising an RV; but rather, these certifications all have to do with testing, diagnosing, and resolving problems that exist on an RV.

It was evident from his deposition testimony that Mr. Bailey is simply an investigator and not a qualified expert in the field of valuation. At one point in the deposition he was not even sure if he had given an expert opinion in the case. (Exhibit 2, p. 43, l. 8-11). When asked what his expertise was, Mr. Bailey humbly responded "[e]ducation, expertise, knowledge and training," almost as if he had been spoon fed that response. (Id. at p. 23, l. 2-4). Indeed, Mr. Bailey continued to refer to his expert qualifications as "education, expertise, knowledge and training" throughout his deposition; however, Mr. Bailey was never able to describe what about those areas allowed him to properly assess the value of an RV. Despite his education, knowledge, and training described above and by Mr. Bailey own testimony, he is not a qualified witness to give an appraisal of the RV at issue.

B. **The Methodology Employed by Mr. Bailey to Appraise the Value of the RV is Unreliable**.

Mr. Bailey has provided no scientific support for the methodology he employed in developing his opinion as to the appraisal value of the RV. Indeed, Mr. Bailey makes no effort in his report to explain the methodology he used to determine the appraisal value. Furthermore, he could not adequately explain his own methodology during his deposition; but rather, he testified that he was mainly using his experience in the RV industry as a guide to his appraisal (Id. at p. 182, l. 25- p. 183, l. 3). This type of subjective and unsupported opinion is precisely what is prohibited by *Daubert* and its progeny.

For example, Mr. Bailey begins his discussion of his "Fair Market Value Determination" on page 29 of his report. (Exhibit 1 at p. 29). Interestingly, his report indicates that he was asked to make two separate determinations. (Id. at p. 29-30). However, when deposed, he conceded that

he only performed one determination. Indeed, Mr. Bailey gave no consideration to the price at which the property would change hands between a willing buyer and willing seller with knowledge of all relevant facts. Instead, he focused his analysis on the following:

> The fair market value as if you consider determining actual damages, if any, sustained by Daniel and Tammie Hill from any breach of contract or warranty, the measure of those damages is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been warranted, unless special circumstances show proximate damages of a different amount.

(Id. at p. 30).

On page 33 of his report, Mr. Bailey discusses the methodology he "followed in conducting his valuation determination." (Id. at p. 33). Mr. Bailey lists twenty-one (21) topics that he claims to have "followed" in reaching his conclusion. It became clear during his deposition testimony that this was merely a list of topics – not a methodology – and certainly not one that amounts to "good science." (Id.) Importantly, Mr. Bailey conceded that he did not consider several of the topics which comprise his "methodology" when evaluating the RV at issue. For example, Mr. Bailey could not even describe what he meant by "Options" which appears in his list of topics. (Exhibit 2, p. 169, l. 13 – p. 170, l. 6). He did not consider "estimate cost of repairs" as a part of his evaluation. (Id. at p. 181, l. 25 – p. 182, l. 5). He did not consult with any other RV dealers on the appraisal value of the RV. (Id. at p. 182, l. 6-7) He could not explain, at the time of his deposition, how the "diminished inherent value" or depreciation factored into his methodology. (Id. at p. 179, l. 11-24). He claims that he considered the NADA or Blue Book values of the RV, but he could not remember at one point what affect they had on his opinion; however, he later testified that they did not factor into his opinion. (Id. at p. 177, l. 9-18; p. 182, l. 9-12). He did not consider any other expert reports as a part of his evaluation. (Id. at p. 182, l. 13-17). He did not consult any written standards on how to appraise an RV. (Id. at p. 189, l. 2-4). Certainly, at

minimum, Mr. Bailey's failure to follow his own self-proclaimed "methodology" cannot constitute "good science" for the purpose of establishing an expert opinion.

In a persuasive case, the United States District Court for the District of New Jersey excluded the testimony of the Plaintiff's valuation expert finding that his report and proposed testimony lacked a discernable methodology. The Court was particularly alarmed by the fact that the expert failed to consider two of the four factors set forth in his own methodology. Specifically, the Court found that the expert failed to consider the cost of repairs had the problems not been covered under the warranty as well as what it would cost to fix a certain defect. The Court held that "[a] basic requirement under *Daubert* is that the methodology followed is capable of being replicated. Here, the methodology was not followed by [the expert] and thus cannot be replicated." *Smith v. Freightliner, LLC*, 239 F.R.D. 390 at 9 (U.S. Dist. Ct. – N.J. 2006). Much like the expert in *Smith*, Mr. Bailey has not followed or considered portions of his own methodology; therefore, his methods cannot be replicated and are not reliable.

In addition, Mr. Bailey could not assign a weight given to each of the topics that make up his methodology. Rather, he states that the weight of each of the factors considered is based upon his "default" qualification of 35 years of experience. In *Mike's Train House, Inc. v. Lionel*, LLC, 472 F.3d 398 (6th Cir. 2007), the Court excluded the expert opinion in part because the expert "arbitrarily determined" how much significance to assign to each of the criteria in the expert's methodology.

It is clear that Mr. Bailey has created his own methodology for the purposes of this litigation – based solely on his 35 years of experience as a service technician and sales representative. The methodology has not been peer reviewed. Mr. Bailey has never tested the accuracy of his own methodology; and therefore, he does not know his methodology's rate of error.

In *Stein*, the Court found that the expert had created a methodology for the sole purpose of litigation. The Court stated that the Sixth Circuit has "been suspicious of methodologies created for the purpose of litigation, because 'expert witnesses are not necessarily always unbiased scientists.'" Other courts, too, have considered whether an expert's testimony relates to matters growing naturally and directly out of their own research, or whether the expert's testimony has been developed for the purposes of litigation. *See, e.g., Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) (noting that this is a "very significant fact to be considered"). (internal citations omitted). The fact that the methodology was created for the purposes of litigation further supported the Court's conclusion in *Stein* that the expert's testimony was not reliable under *Daubert*. The same conclusion should be reached in this case.

Not surprisingly, Mr. Bailey seems to have employed another methodology aside from giving consideration to the twenty-one topics listed in his report. Indeed, Mr. Bailey testified that as a part of his assignment he was valuing the defects that he found during his site visit on February 6, 2018 that may not have been previously discovered or reported to Winnebago. (Exhibit 2, p. 140, l. 16 – p. 142, l. 16). He even testified that he would have to combine the value of each defect to come up with a total value for purposes of appraising the RV. (Id.). However, when asked to put a value on each individual defect he found, he consistently said "I don't know." (Id.).

Mr. Bailey's report and testimony are completely devoid of any scientific support for his self-derived methodology for appraising the RV. In fact, there is no indication that Mr. Bailey's report or testimony reflect any scientific knowledge, that his findings were derived from any scientific method, or that his opinions amount to good science. Rather, he attempts to pass off his conclusions as expert opinions simply by listing a number of topics that one might consider

relevant to appraising an RV. The troubling part is that Mr. Bailey did not even consider portions of his own methodology. For this reason alone, his testimony should be excluded.

## CONCLUSION

Plaintiffs' retention of Dennis Bailey to serve as an expert on the issue of appraisal value of the RV serves to illustrate the random, shotgun approach Plaintiffs have taken in this warranty case. Plaintiffs are unable to demonstrate that Mr. Bailey is qualified to given an expert opinion in this case. Even if he was somehow qualified to do so, his chosen methodologies – some of which he failed to even consider - fail to present legal or factual support that renders his opinions credible in this case. Mr. Bailey's opinions in this case amount to nothing more than a guess as to what the value of the RV may be at a certain point in time and, as such, should be excluded as this type of speculation would only serve to confuse, rather than assist, the trier of fact.

Respectfully submitted,

**LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC**

BY: **/s/ Benjamin T. Reese**
**BENJAMIN T. REESE, TN BPR: 023847**
**KALEY P. BELL, TN BPR: 033482**
*Attorneys for Winnebago Industries, Inc.*
Tallan Building – 5th Floor
200 West Martin Luther King Boulevard
Chattanooga, TN 37402
Telephone: (423) 424-3919
Facsimile: (423) 308-0919

# CERTIFICATE OF SERVICE

I hereby certify that on **November 16, 2018**, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Ronald L. Burdge
8250 Washington Village Drive
Dayton, Ohio 45458-1850
Ron@BurdgeLaw.com

Brent S. Snyder
2125 Middlebrook Pike
Knoxville, TN  37921
Brentsnyder77@gmail.com

                                  BY:    **/s/ Benjamin T. Reese**
                                              **BENJAMIN T. REESE**
                                              **TN BPR: 023847**