IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| TAMMIE HILL, et al., | CASE NO. 3:17-cv-0678 |
| PLAINTIFFS | JUDGE WILLIAM L. CAMPBELL, JR. |
| | MAGISTRATE JEFFERY S. FRENSLEY |
| - VS. - | |
| WINNEBAGO INDUSTRIES, INC. | PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S |
| DEFENDANT | MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT, DENNIS BAILEY |

Now come Plaintiffs Tammie and Daniel Hill to submit their memorandum in opposition to Defendant Winnebago Industries, Inc.'s Motion in Limine to Exclude the Testimony of Plaintiffs' Expert, Dennis Bailey. Winnebago asserts that Mr. Bailey's valuation testimony should be excluded because (1) Mr. Bailey is not qualified to offer an opinion on the appraisal of the RV, and (2) the methodology employed by Mr. Bailey to appraise the value of the RV is unreliable. This is not correct since (1) Mr. Bailey is qualified to give valuation testimony in this case based on his extensive 35 years of practical experience as both an RV salesman and service technician, and (2) Mr. Bailey's valuation testimony is reliable since the appraisal methodology utilized by Mr. Bailey is standard in the RV industry and is based on his personal knowledge and experience.

1

## I.   Background Facts

This case involves of a defective 2016 Winnebago Sunstar LX 30T, which was manufactured and warranted by Winnebago. Unbeknownst to the Hills, the RV was subject to repair twice under the Winnebago warranty before they took delivery of it in January of 2016 and on February 5, 2016 because the leveling jack system was not working properly and the warning light was illuminating.

The Hills' patience was exhausted after discovering that the RV was riddled with defects. To make matters worse, the RV was in the shop a total of three times for repairs under the Winnebago warranty after they purchased it, and it was out of service by reason of repair for a total of 140 days up to and including February 13, 2017. Although numerous defects were worked on repeatedly under Winnebago's warranty, several defects were never fixed. As a result, the Hills initiated the instant action.

The Hills timely disclosed Dennis Bailey as their expert and provided Winnebago a copy of Mr. Bailey's report. On August 16, 2018, Winnebago took Mr. Bailey's deposition and subsequently filed its motion in limine to exclude Mr. Bailey from testifying and giving his opinions regarding the RV's value.

## II.   Mr. Bailey's Experience and Credentials

Mr. Bailey has worked in the Recreational Vehicle Industry for RV dealers and an RV manufacturer, both selling and servicing recreational motor vehicles, for a total of 35 years. Affidavit of Dennis Bailey, ¶ 2 (Exhibit 1).

From the time Mr. Bailey was a teenager in the early 1970s, he has been employed at an RV dealership. *Id.* at ¶ 5; Deposition of Dennis Bailey, p. 27, L 23-25 (Exhibit 2). In 1983, Mr. Bailey began working at the family-owned RV dealership. *Id.* at ¶ 6; Bailey

Report, Exhibit 1, p. 35 (Exhibit 3). Mr. Bailey worked in all areas, including sales and service, at the family-owned RV dealership since it was a small business. *Id.* Mr. Bailey was responsible for overall RV service, pre-delivery inspections, and body shop repairs for all multi-line RV manufacturers, as well as the sale of new and used RVs, which involved appraising RV values, doing repair cost estimates, and assisting others in doing RV appraisals and repair cost estimating. *Id.*

From 1983 until 1985, Mr. Bailey worked as a salesman selling both new and used RVs. *Id.* at ¶ 7. As part of his role as a salesman, Mr. Bailey was responsible for determining the value of an RV based on its condition and history. *Id.* Beginning in 1985, Mr. Bailey began working primarily as a service technician repairing both new and used RVs. *Id.* At the same time, Mr. Bailey was also working as a service technician. *Id.* However, even in his role as a service technician, Mr. Bailey appraised both new and used RVs on a daily basis. *Id.* at ¶ 8.

As a service technician, Mr. Bailey was responsible for conducting a pre-delivery inspection ("PDI") on all new RVs that arrived from the manufacturer. *Id.* at ¶ 9. During the PDI, Mr. Bailey would inspect a new RV to determine its condition and defects, the cost of repairs, and its value. *Id.* In addition to inspecting and appraising new RVs, Mr. Bailey was responsible for inspecting and appraising trade in RVs. *Id.* Mr. Bailey would inspect a trade in RV to determine its condition and defects, the cost of repairs, and its value. *Id.* Although Mr. Bailey was primarily a service technician beginning in 1985, Mr. Bailey routinely assisted in selling both new and used RVs when the family-owned RV dealership was short staffed. *Id.* at ¶ 10.

3

From 2005 until the present, Mr. Bailey has worked as a consultant and RV investigator from RV/Marine Forensic Investigations & Appraisals of America, LLC. *Id.* at ¶ 11; Bailey Report, Exhibit 1, p. 35 (Exhibit 3). In that position, Mr. Bailey consults on cases by inspecting and investigating an RV, determining the RV's defects, and appraising the RV. *Id.* Although Mr. Bailey has been a consultant with RV/Marine Investigations & Appraisals of America, LLC for 13 years, during that time Mr. Bailey has also been employed at various RV dealerships. *Id.* at ¶ 12.

From 2007 until 2011, Mr. Bailey was employed at Kempton RV Center as a service manager. *Id.* at ¶ 13. As the service manager, Mr. Bailey was responsible for appraising both new and used RVs. *Id.* During the PDI for a new RV, Mr. Bailey would inspect the new RV's condition and defects, the cost of repairs, and its value. *Id.* In addition to inspecting and appraising new RVs, Mr. Bailey was responsible for inspecting and appraising trade in RVs. *Id.* Mr. Bailey would inspect a trade in RV to determine its condition and defects, the cost of repairs, and its value. *Id.* Additionally, Mr. Bailey assisted in the selling both new and used RVs when the RV dealership was short staffed. *Id.*

From 2011 until 2016, Mr. Bailey was employed at SST Auto & RV as service manager. *Id.* at ¶ 14; Depo. D. Bailey, p. 35, L 13-25 (Exhibit 2). Again, as the service manager, Mr. Bailey was responsible for appraising both new and used RVs. *Id.* Mr. Bailey would determine the condition and defects, the cost of repairs, and the value of new and trade in RVs. *Id.*

During his 35-year career in the RV industry, Mr. Bailey has appraised hundreds of RVs, both new and used. *Id.* at ¶ 15. Additionally, Mr. Bailey has done thousands of

4

cost estimates and repairs for nearly all RV brands. *Id.* And, within the past 10 years, Mr. Bailey has examined hundreds of RVs for various reasons, including determining the RV's defects, the repair costs, and its value. *Id.* at ¶ 16.

## III. Law & Argument

Winnebago moved this Court in limine to exclude Mr. Bailey's valuation testimony. In its motion, Winnebago asserts two basic arguments: (1) Mr. Bailey is not qualified to give valuation testimony, and (2) Mr. Bailey's valuation testimony is not reliable. However, Winnebago's arguments fail. First, Mr. Bailey is qualified to give valuation testimony in this case based on his extensive 35 years of practical experience as both an RV salesman and service technician appraising RVs and determining repair cost estimates. Second, Mr. Bailey's valuation testimony is reliable since the appraisal methodology utilized by Mr. Bailey is standard in the RV industry and is based on his personal knowledge and experience.

### A. Admission of Expert Testimony Is at the Trial Court's Discretion.

The decision to allow or to exclude expert testimony is committed to the sound discretion of the trial court. *Gen. Electric Co. v. Joiner*, 522 U.S. 136, 141-42, 118 S. Ct. 512, 517, 139 L. Ed. 2d 508 (1997); *Mayhew v. Bell S.S. Co.*, 917 F.2d 961, 962 (6th Cir. 1990); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-529 (6th Cir. 2008). The fundamental purpose of the trial court's gatekeeping requirement is to ensure that expert testimony is both relevant and reliable. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 528-529; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). A key question in doing so is whether the testimony will "assist the trier of fact

5

to understand the evidence to determine a fact at issue." *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001); Fed. R. Evid. 702.

Here, Winnebago does not argue that Mr. Bailey's valuation testimony is not relevant. Instead, Winnebago argues that Mr. Bailey lacks the education, experience, knowledge, skill or training to give valuation testimony, and that Mr. Bailey's appraisal methodology is unreliable.

The basic task of the district court with regard to analyzing reliability is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert used in reaching his conclusions. *Barreto*, 268 F.3d at 334-335. In examining whether the expert is qualified in the relevant field, the Court should consider a proposed expert's full range of practical experience as well as academic or technical training. *Barreto,* 268 F.3d at 334-335; *Smith v. Ford Motor Company*, 215 F.3d 713, 718 (7th Cir. 2000). This obligation extends to experience-based expert testimony. *Id.* (citing *Kumho Tire Co, Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999)).

While *Daubert* sets forth non-exhaustive factors it is notable that the factors chiefly concern themselves with "scientific expert" analysis and opinions. *Kumho*, 526 U.S. at 147; see also *In re Scrap Metal Antitrust Litig*., 527 F.3d at 528-529. In *Kumho*, the Supreme Court stated that the *Daubert* factors may not be relevant to experience-based testimony. *Id.* at 152. Instead, district courts are entitled to be "flexible" and are not required to consider the familiar *Daubert* factors (i.e., whether a theory or technique can be or has been tested, whether it has been subjected to peer review and publication, whether it has a known or potential error rate, and whether it enjoys a general acceptance within a relevant scientific community) in every case involving expert

testimony. *Id.* at 152 ("whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine").

Rather, it is within the district court's discretion to apply only some of the *Daubert* factors in a particular case. *Id.* at 150 ("the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony")(citation omitted). In fact, the Sixth Circuit has recognized that the *Daubert* factors "are not dispositive in every case" and should be applied only "where they are reasonable measures of the reliability of expert testimony." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 528-529 (citing *Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001)).

Here, as described more fully below, Mr. Bailey's qualifications as an RV valuation expert are based on his extensive 35 years of experience appraising both new and used RVs. As such, this Court has the discretion to apply the *Daubert* factors that it sees fit for this particular case.

## B. Mr. Bailey is Qualified to Give Expert Valuation Testimony Based on his Specialized Knowledge, Skill, and Experience.

First, Winnebago argues that Mr. Bailey lacks the requisite formal education, scientific training, and study to provide expert testimony in this case regarding the subject RV's value. However, Winnebago is overlooking the crucial fact that an expert's specialized knowledge may be substantially derived from practical experience as opposed to formal education or training. *Barreto,* 268 F.3d at 335. When examining whether an expert is qualified in the relevant field, the Court should consider the

7

expert's full range of practical experience as well as academic or technical training. Fed. R. Evid. 702; *Barreto,* 268 F.3d at 335. Here, it is clear that Mr. Bailey is more than qualified to give expert testimony on an RV's value based on his extensive, practical experience appraising both new and used RVs.

From the time Mr. Bailey was a teenager in the early 1970s, he has been employed at an RV dealership. Aff. D. Bailey, ¶ 5 (Exhibit 1); Deposition of Dennis Bailey, p. 27, L 23-25 (Exhibit 2). In 1983, Mr. Bailey began working at the family-owned RV dealership. *Id.* at ¶ 6; Bailey Report, Exhibit 1, p. 35 (Exhibit 3). Mr. Bailey worked in all areas, including sales and service, at the family-owned RV dealership since it was a small business. *Id.* Mr. Bailey was responsible for overall RV service, pre-delivery inspections, and body shop repairs for all multi-line RV manufacturers, as well as the sale of new and used RVs, which involved appraising RV values, doing repair cost estimates, and assisting others in doing RV appraisals and repair cost estimating. *Id.*

From 1983 until 1985, Mr. Bailey worked as a salesman selling both new and used RVs. *Id.* at ¶ 7. As part of his role as a salesman, Mr. Bailey was responsible for determining the value of an RV based on its condition and history. *Id.* Beginning in 1985, Mr. Bailey began working primarily as a service technician repairing both new and used RVs. *Id.* At the same time, Mr. Bailey was also working as a service technician. *Id.* However, even in his role as a service technician, Mr. Bailey appraised both new and used RVs on a daily basis. *Id.* at ¶ 8.

As a service technician, Mr. Bailey was responsible for conducting a pre-delivery inspection ("PDI") on all new RVs that arrived from the manufacturer. *Id.* at ¶ 9. During the PDI, Mr. Bailey would inspect a new RV to determine its condition and defects, the

8

cost of repairs, and its value. *Id.* In addition to inspecting and appraising new RVs, Mr. Bailey was responsible for inspecting and appraising trade in RVs. *Id.* Mr. Bailey would inspect a trade in RV to determine its condition and defects, the cost of repairs, and its value. *Id.* Although Mr. Bailey was primarily a service technician beginning in 1985, Mr. Bailey routinely assisted in selling both new and used RVs when the family-owned RV dealership was short staffed. *Id.* at ¶ 10.

From 2005 until the present, Mr. Bailey has worked as a consultant and RV investigator from RV/Marine Forensic Investigations & Appraisals of America, LLC. *Id.* at ¶ 11; Bailey Report, Exhibit 1, p. 35 (Exhibit 3). In that position, Mr. Bailey consults on cases by inspecting and investigating an RV, determining the RV's defects, and appraising the RV. *Id.* Although Mr. Bailey has been a consultant with RV/Marine Investigations & Appraisals of America, LLC for 13 years, during that time Mr. Bailey has also been employed at various RV dealerships. *Id.* at ¶ 12.

From 2007 until 2011, Mr. Bailey was employed at Kempton RV Center as a service manager. *Id.* at ¶ 13. As the service manager, Mr. Bailey was responsible for appraising both new and used RVs. *Id.* During the PDI for a new RV, Mr. Bailey would inspect the new RV's condition and defects, the cost of repairs, and its value. *Id.* In addition to inspecting and appraising new RVs, Mr. Bailey was responsible for inspecting and appraising trade in RVs. *Id.* Mr. Bailey would inspect a trade in RV to determine its condition and defects, the cost of repairs, and its value. *Id.* Additionally, Mr. Bailey assisted in the selling both new and used RVs when the RV dealership was short staffed. *Id.*

From 2011 until 2016, Mr. Bailey was employed at SST Auto & RV as service manager. *Id.* at ¶ 14; Depo. D. Bailey, p. 35, L 13-25 (Exhibit 2). Again, as the service manager, Mr. Bailey was responsible for appraising both new and used RVs. *Id.* Mr. Bailey would determine the condition and defects, the cost of repairs, and the value of new and trade in RVs. *Id.*

During his 35-year career in the RV industry, Mr. Bailey has appraised hundreds of RVs, both new and used. *Id.* at ¶ 15. Additionally, Mr. Bailey has done thousands of cost estimates and repairs for nearly all RV brands. *Id.* And, within the past 10 years, Mr. Bailey has examined hundreds of RVs for various reasons, including determining the RV's defects, the repair costs, and its value. *Id.* at ¶ 16.

The fact that Mr. Bailey's valuation testimony is not based on a formal education or training does not preclude it from being considered expert testimony. Fed. R. Evid. 702 allows expert testimony based on "technical, or other specialized knowledge." See Fed. R. Evid. 702, Notes of Advisory Committee on Proposed Rules ("The fields of knowledge which may be drawn upon are not limited merely to the "scientific" and "technical" but extend to all "specialized" knowledge."). In fact, the rule specifically contemplates the admission of testimony by experts whose knowledge is based on experience. See Fed. R. Evid. 702; *Barreto*, 268 F.3d at 334-355. The Advisory Committee's notes to Rule 702 provide that "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."

The Advisory Committee to Rule 702 even appreciated the role experience can play in giving an expert witness reliability, as evidenced by their note saying "[n]othing in this amendment is intended to suggest that experience alone–or experience in

conjunction with other knowledge, skill, training or education–may not provide a sufficient foundation for expert testimony." See Fed. R. Evid. 702 Advisory Committee's Note. Thus, the fact that the majority of Mr. Bailey's qualifications are based on his extensive experience does not preclude him from giving expert valuation testimony.

When considering Mr. Bailey's full range of practical experience, it is evident that he is qualified to give expert testimony regarding the subject RV's value. Mr. Bailey's specialized knowledge in RV values is based on his 35 years of practical experience conducting appraisals on both new and used RVs. Moreover, Mr. Bailey's valuation testimony is relevant because it will aid the jury in determining the subject RV's value in its defective condition at the date of purchase.

Therefore, Plaintiffs respectfully request that this Court determine that Mr. Bailey is qualified to give expert testimony regarding RV values.

### C.  Mr. Bailey's Valuation Expert Testimony is Reliable.

Second, Winnebago argues that Mr. Bailey's methodology to determine his valuation testimony is unreliable because (1) Mr. Bailey's appraisal methodology lacks "scientific support", and (2) Mr. Bailey fails to follow his appraisal methodology. However, Winnebago's arguments fail since (1) Mr. Bailey is not providing "scientific" expert testimony, and (2) Mr. Bailey followed the appraisal methodology that is standard in the RV industry.

### 1.  Mr. Bailey is Not Providing "Scientific" Expert Testimony.

From the outset, the obvious should be acknowledged: the valuation of an RV, similar to real estate, is as much art as it is a science, and it is necessarily subjective to some extent. The real value of an RV is only what a given person is willing to pay for it at

a given time. See *Kingsport Pavilion, LLC v. Crown Enters.*, No. 2:08-CV-114, 2010 U.S. Dist. LEXIS 146920, *3 (E.D. Tenn. Mar. 2, 2010)(finding that the value real estate is necessarily subjective to some extent).

Despite this, Winnebago contends that Mr. Bailey's appraisal methodology is unreliable because it is "completely devoid of any scientific support", and there is no indication that his testimony reflects any "scientific knowledge" or are "derived from any scientific method." However, Mr. Bailey's valuation testimony is not "scientific" expert testimony as contemplated in *Daubert*. See *Kumho*, 526 U.S. at 147; see also *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 528-529. Instead, Mr. Bailey's anticipated valuation testimony is non-scientific expert testimony.

In *Berry v. City of Detroit*, 25 F.3d 1342, 1350-51 (6th Cir. 1994), the Sixth Circuit adopted four *Daubert* factors as an analytical framework when assessing the reliability of proposed non-scientific expert testimony. See also *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319 (6th Cir. 2001). However, in *United States v. Jones*, 107 F.3d 1147, 1158 (6th Cir. 1997), the Sixth Circuit recognized that the four specific factors utilized in *Daubert* may be of limited utility in the context of non-scientific expert testimony. The Sixth Circuit noted that "if [the *Daubert*] framework were to be extended to outside the scientific realm, many types of relevant and reliable expert testimony-- that derived substantially from practical experience--would be excluded. Such a result truly would turn *Daubert*, a case intended to relax the admissibility requirements for expert scientific evidence, on its head." *Id*. at 1158. Indeed, even the *Berry* Court recognized that "the distinction between scientific and non-scientific expert testimony is a critical one", and that *Daubert* is only of limited help in assessing technical or

12

experiential expertise. *Berry*, 25 F.3d at 1349. Consequently, in *Jones*, the Sixth Circuit refused to apply the factors outlined in *Daubert* to testimony involving a non-scientific field. *Jones*, 107 F.3d at 1158.

Following the Sixth Circuit's ruling in *Jones*, the Supreme Court clarified the applicability of the *Daubert* factors to non-scientific evidence in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999). In *Kumho*, the Court reaffirmed *Daubert*'s central holding that a trial judge's "gatekeeper" function applies to all expert testimony, regardless of whether such testimony is based upon scientific, technical, or other specialized knowledge. *Id.* at 141, 147-49. With respect to the individual factors enumerated in *Daubert*, the *Kumho* Court held that trial courts may consider such factors when assessing the reliability of all types of expert testimony. *Id.* at 149-52. The Court stressed, however, that the *Daubert* factors neither necessarily nor exclusively apply to all experts or in every case. *Id.* at 141. In some cases (even cases involving non-scientific expert testimony), the factors may be pertinent, while in other cases "the relevant reliability concerns may focus upon personal knowledge or experience." *Id.* at 150.

Mr. Bailey's expert valuation testimony is the type of non-scientific expert testimony that the *Jones* and *Kumho* Courts had in mind. The *Daubert* factors, being focused on scientific expert testimony, are of limited help in guiding this Court in determining whether Mr. Bailey's valuation testimony is reliable. Instead, as addressed by the Supreme Court in *Kumho*, the relevant reliability concerns should be focused on Mr. Bailey's personal knowledge and experience in appraising RVs during his 35-year

13

career in the RV industry using an appraisal methodology that is standard in the RV industry.

### 2. Mr. Bailey's Appraisal Methodology is Reliable.

Next, Winnebago asserts that Mr. Bailey's appraisal methodology is not "good science." However, Winnebago's argument fails since Mr. Bailey's valuation testimony is not scientific expert testimony. Moreover, Mr. Bailey's appraisal methodology is reliable considering his personal knowledge or experience. See *Kumho*, 526 U.S. 137 at 150 ("the relevant reliability concerns may focus upon personal knowledge or experience").

In his report, Mr. Bailey identifies 21 factors the he considers when determining an RV's value. Aff. D. Bailey, ¶ 19 (Exhibit 1); Bailey Report, p. 33 (Exhibit 3). Depending on the case, some factors might be more important than others to determine value. Aff. D. Bailey, ¶ 19 (Exhibit 1); Depo. D. Bailey, p. 168-169, L 20-12 (Exhibit 2). The factors to be considered when determining an RV's value, include but are not limited to:

1. Service records reviewed if available or applicable

2. Personal inspection of overall condition

3. Type of vehicle

4. Estimated or actual mileage on RV

5. Options

6. Evidence of prior or existing damage

7. Estimate cost of repairs

8. Photographic or video documentation

9. Geographical location consideration

10. Consultation with dealers

14

11. Expert reports pertaining to the vehicle or items

See Bailey Report, p. 30 and 33 (Exhibit 3). Not only is this appraisal methodology based upon Mr. Bailey's knowledge and 35 years of practical experience, it is also the generally accepted methodology for experts in the RV industry. Aff. D. Bailey, ¶ 20, 29-30 (Exhibit 1); Depo. D. Bailey, p. 168, L 20-24 (Exhibit 2); Bailey Report, p. 28 (Exhibit 3). As such, Mr. Bailey's appraisal methodology is reliable.

In fact, Mr. Bailey considered nearly all of these factors when determining the value of the subject RV. Aff. D. Bailey, ¶ 21, 29 (Exhibit 1). Specifically, in appraising the subject RV, Mr. Bailey inspected the RV and reviewed the RV service history, manufacturer warranty, purchase documents and all supplied documents as supplied by the defendant and owner, 228 photographs, and a video. Aff. D. Bailey, ¶ 17-18 (Exhibit 1); Bailey Report, p. 30 (Exhibit 3). Thus, Winnebago's argument fails since Mr. Bailey followed the standard appraisal methodology.

### 3. Mr. Bailey's Valuation Testimony Regarding the RV's Fair Market Value is Consistent with Tennessee Law.

Next, Winnebago asserts that Mr. Bailey's valuation testimony is unreliable because he only provided an opinion as to the fair market value of the RV if the RV's issues and defects were known at the time of sale. However, Winnebago's argument fails since Mr. Bailey's opinion as to the RV's fair market value is consistent with Tennessee law.

Pursuant to T.C.A. § 47-2-714, the measure of damages for a breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless

15

special circumstances show proximate damages of a different amount.

In his report, Mr. Bailey specifically states that "[t]he appraiser was asked to determine the value as of the day of sale, and as if the buyer had knowledge of the problematic history or current issues of the RV at that time." Bailey Report, p. 34 (Exhibit 3); see also Aff. D. Bailey, ¶ 28 (Exhibit 1). Mr. Bailey then opines that the fair market value of the RV was $55,000.00 if the issues were known at the time of sale. *Id*. Since the RV's purchase price was $126,350.04, the difference of the value of the goods is $78,081.90. *Id*. As such, Mr. Bailey's valuation opinions are consistent with Tennessee law.

Winnebago seems to take issue with the fact that Mr. Bailey did not specifically determine the fair market value of the RV between a willing buyer and a willing seller. Although the price at which an RV would change hands between a willing buyer and a willing seller is an appropriate determination of an RV's fair market value, this determination of fair market value would not be consistent with Tennessee law regarding actual damages for a breach of warranty. See T.C.A. § 47-2-714. Moreover, this determination would relate to the fair market value for the RV at the time of the inspection - not at the time of sale. The fair market value of the RV in its current state is irrelevant in determining the Plaintiffs' actual damages. Thus, the fact that Mr. Bailey did not determine the fair market value of the RV between a willing buyer and seller is irrelevant to the issues in this case.

Therefore, the fact that Mr. Bailey only provided an opinion as to the fair market value of the RV if the RV's issues and defects were known at the time of sale does not make Mr. Bailey's valuation testimony unreliable since his opinions are consistent with

16

Tennessee law.

### 4. Winnebago's Arguments Fail.

Next, Winnebago makes a series of 5 basic arguments in an attempt to support its position that Mr. Bailey's appraisal methodology is unreliable. However, as described below, each of Winnebago's arguments fail.

First, Winnebago repeatedly argues that Mr. Bailey's valuation testimony is unreliable because Mr. Bailey failed to follow the methodology outlined in his report. However, Winnebago has mischaracterized Mr. Bailey's deposition testimony.

Winnebago argues that Mr. Bailey's methodology is unreliable because he did not consult with dealers or review any expert reports pertaining to the RV. However, Mr. Bailey typically only consults with one or more dealers if something odd or unusual comes up, such as a special or unique piece of equipment or component. Aff. D. Bailey, ¶ 22 (Exhibit 1). Along those same lines, Mr. Bailey generally only reviews an expert report if someone else has done one before his inspection occurs. *Id*. at ¶ 23. In this case, Winnebago's expert report was not due until after Mr. Bailey's inspection of the subject RV. *Id*.

Winnebago argues that Mr. Bailey's methodology is unreliable because he did not consider cost estimates as part of his appraisal. However, in his deposition, Mr. Bailey stated that he did consider the repair costs, but did not calculate a total. See Depo. D. Bailey, p. 172-173, L 24-4 (Exhibit 2); see also Aff. D. Bailey, ¶ 24 (Exhibit 1).

Winnebago argues that Mr. Bailey's methodology is unreliable because he could not explain how "diminished inherent value" or depreciation factored into his valuation testimony. However, in his deposition, Mr. Bailey testified that he would have

17

considered depreciation if the RV was 100% no defects, but in this case there were too many defects. See Depo. D. Bailey, p. 171-172, L 7-4; p. 190-191, L 19-5 (Exhibit 2); see also Aff. D. Bailey, ¶ 25 (Exhibit 1).

Winnebago argues that Mr. Bailey's methodology is unreliable because he could not identify what effect the NADA and Blue book had on his valuation testimony. However, in his deposition, Mr. Bailey testified that he reviewed the NADA and Blue book but that they did not affect his appraisal. See Depo. D. Bailey, p. 177, L 9-18; p. 182, L 9-12 (Exhibit 2); see also Aff. D. Bailey, ¶ 26 (Exhibit 1).

It is clear that Mr. Bailey followed the appraisal methodology, as outlined in his report, that is the generally accepted standard in the RV industry. Thus, Mr. Bailey's valuation testimony is reliable, and Winnebago's argument fails.

Second, Winnebago cites to *Smith v. Freightliner, LLC*, 239 F.R.D. 390 (U.S. Dist. Ct. - N.J. 2006), a non-controlling case, to support its position that an expert's failure to follow his own methodology renders the expert's opinions unreliable. However, the *Smith* case is easily distinguishable from the instant case. In *Smith*, the Court excluded the proposed expert's diminution in value opinions because the expert did not follow his own methodology. However, as described above, Mr. Bailey did follow the appraisal methodology and considered all of the appropriate factors, which are standard in the RV industry, in arriving at his valuation opinions. See Aff. D. Bailey, ¶ 29-30 (Exhibit 1). As such, Winnebago's argument fails.

Third, Winnebago cites to *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398 (6th Cir. 2007) to supports its position that "arbitrarily" determining the weight of each

18

factor renders an expert's opinions unreliable. However, the *Lionel* case is easily distinguishable from the instant case.

In *Lionel*, the plaintiff filed suit against the defendant for misappropriation of trade secrets. *Id*. at 403. The plaintiff alleged that the defendant had copied design drawings for die-cast model trains. *Id*. The district court permitted the plaintiff's expert, a mechanical engineer, to give scientific expert opinions regarding the rates of copying. *Id*. at 407. The Sixth Circuit held that the trial court abused its discretion because, among other things, the expert's methodology failed to meet the *Daubert* factors and did not reflect the realities of the Korean design industry. *Id*. at 408. Moreover, the plaintiff conceded that the expert created the precise methodology at issue for litigation. *Id*.

Here, unlike in *Lionel*, Mr. Bailey is not providing scientific expert opinions. As described above, Mr. Bailey is providing non-scientific opinions; thus, the *Daubert* factors do not strictly apply. Also, the appraisal methodology used by Mr. Bailey to determine the subject RV's value is the standard appraisal methodology in the RV industry. Aff. D. Bailey, ¶ 29-30 (Exhibit 1). In other words, these are the same factors that anyone in the RV industry would consider when appraising an RV. Moreover, Mr. Bailey's appraisal methodology was not solely created for the purposes of litigation. Aff. D. Bailey, ¶ 20 (Exhibit 1). In fact, common sense would dictate that the factors outlined in Mr. Bailey's report are the same factors that anyone would consider when determining the value of any vehicle. See Bailey Report, p. 33 (Exhibit 3). Thus, the instant case is easily distinguishable from the *Lionel* case.

Fourth, Winnebago argues that Mr. Bailey's appraisal methodology is unreliable because it has not been peer reviewed or tested for accuracy. Winnebago completely

19

ignores the fact that Mr. Bailey's methodology is the standard appraisal methodology in the RV industry. Aff. D. Bailey, ¶ 29-30 (Exhibit 1). However, the fact that Mr. Bailey's appraisal methodology may not have been subjected to the crucible of peer review, or that its validity has not been confirmed through empirical analysis, does not render the methodology unreliable and inadmissible. See *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319 (6th Cir. 2001).

Fifth, Winnebago argues that Mr. Bailey "seems to have employed another methodology aside from giving consideration to the twenty-one topics listed in his report." To support this argument, Winnebago argues that Mr. Bailey testified that he was valuing the RV's specific defects. However, Winnebago is again mischaracterizing Mr. Bailey's deposition testimony.

In fact, in the portions of Mr. Bailey's deposition cited by Winnebago, defense counsel specifically asks Mr. Bailey how much it would cost to repair a specific defect and how much that would affect the RV's value. In response, Mr. Bailey gives an estimate on the labor and parts, but states that he cannot determine the impact of just one defect on the RV's value since he must consider all of the defects and conditions to determine the RV's value. See Depo. D. Bailey, p. 140-142, L 2-25 (Exhibit 2).

Winnebago is now attempting to use its own line of questioning in a last ditch effort to argue that Mr. Bailey is employing an different methodology other than the one disclosed in his report. However, when reviewing Mr. Bailey's deposition testimony in context, it is clear that Mr. Bailey is not relying on any other methodology than the one disclosed in his report. Thus, Winnebago's argument fails.

20

Since Mr. Bailey's appraisal methodology and valuation testimony are reliable considering his personal knowledge or experience, Winnebago's arguments fail.

## IV. Conclusion

Winnebago moved this Court in limine to exclude Mr. Bailey's valuation testimony. In its motion, Winnebago asserts two basic arguments: (1) Mr. Bailey is not qualified to give valuation testimony, and (2) Mr. Bailey's valuation testimony is not reliable.

However, Winnebago's arguments fail. First, Mr. Bailey is qualified to give valuation testimony in this case based on his extensive 35 years of practical experience as both an RV salesman and service technician appraising RVs and determining repair cost estimates. Second, Mr. Bailey's valuation testimony is reliable since the appraisal methodology utilized by Mr. Bailey is standard in the RV industry and is based on his personal knowledge and experience.

Therefore, Plaintiffs respectfully request that this Court deny Defendant's motion in limine to exclude testimony of Plaintiffs' expert, Dennis Bailey.

Respectfully submitted,

/s/ Ronald L. Burdge_____
RONALD L. BURDGE
Attorney for Plaintiffs Pro Hac
8250 Washington Village Drive
Dayton, Ohio 45458-1850
Telephone:   937.432.9500
Email:         Ron@BurdgeLaw.com

Brent S. Snyder
Attorney for Plaintiffs
2125 Middlebrook Pike
Knoxville, TN 37921
Telephone:   865.546.2141
Email:         brentsnyder77@gmail.com

## CERTIFICATION OF SERVICE

This will certify that a true and accurate copy of Plaintiffs' *Memorandum in Opposition to Defendant's Motion in Limine to Exclude the Testimony of Plaintiffs' Expert, Dennis Bailey* was served upon Benjamin Reese & Kaley Bell, Leitner, Williams, Dooley & Napolitan, PLLC, 200 W Martin Luther King Boulevard, Chattanooga TN 37402, counsel for Defendant Winnebago, on November 27, 2018, electronically by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/Ronald L. Burdge_____
RONALD L. BURDGE   Pro Hac
Attorney for Plaintiffs

Z:\data\Hill, Tammie\Trial\Etc\Etc Plf MIO to Def Mtn in Limine to Exclude Bailey 112718 ss.wpd